Alvin A. FANCHER, Sr.

v.

The UNITED STATES.

No. 451–75.

United States Court of Claims.

Dec. 13, 1978.

Neil B. Kabatchnick, Washington, D.,C., attorney of record, for plaintiff.

Robert M. Hollis, Washington, D. C., with whom was Asst. Atty. Gen., Barbara Allen Babcock, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, and KASHIWA and KUNZIG, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

KASHIWA, Judge.

This civilian pay case is before the court on cross motions for summary judgment. There are no material facts in dispute. Af-

ter fully reviewing the briefs and arguments presented by the parties, we hold in favor of defendant.

The pertinent facts as set forth in the briefs are as follows. Plaintiff, a former civilian employee with the Department of Air Force, was employed as a staff car operator, WG–5, Step 3, at Griffiss Air Force Base, New York, beginning on December 8, 1959. At the time of his initial employment, plaintiff was rated by the Veterans Administration as 30 percent disabled[1] as a result of various disabilities, including a hernia condition. However, no such disability or physical limitation was noted on plaintiff's personnel records at the time.[2]

Plaintiff served continuously as a staff car driver until June 19, 1970, when as a result of a reduction-in-force (RIF) at Griffiss AFB, plaintiff was notified that in lieu of separation he was being offered the position of mess attendant effective August 23, 1970. On June 25, 1970, plaintiff underwent a physical examination to determine whether he was physically qualified for the position of mess attendant. The examination resulted in a medical report that plaintiff was not physically qualified for the position due to his inability to perform the lifting duties required of a mess attendant.

Anticipating the adverse results of the physical examination, plaintiff filed for disability retirement on June 30, 1970, based upon the following medical conditions:

> Right side & left side inernia [sic] hernia repair. Right side had testicle removal. Cartilage of the left knee causing it to locke [sic] & swell, left ankle cut, left elbow was broken. Removed varicose veins of right leg but not of left leg. [Plaintiff's Exhibit 21.]

On the bases of the June 25, 1970, physical examination, plaintiff's disqualification for the mess attendant position, and plaintiff's

---

1. The 30 percent Veterans Administration rating was improper at the time and was subsequently corrected by lowering the rating to 10 percent in 1960. See Plaintiff's Exhibit 14.

2. Defendant asserts the air base officials were aware of plaintiff's physical condition nonetheless and that they compensated for it in assigning plaintiff, throughout his employment as a staff car operator, to details which did not entail lifting.

pre-employment medical records, the Civil Service Commission (CSC), Boston Region, rejected plaintiff's disability request on the grounds that he had never held the mess attendant position and that he was not disabled from the staff car operator position.

Notwithstanding the rejection by the Boston Region of plaintiff's application for disability, the CSC Bureau of Retirement, Insurance and Occupational Health by inadvertence submitted to the commanding officer of the headquarters unit at Griffiss AFB a notice of approval of plaintiff's request for disability retirement (dated August 22, 1970). It also sent plaintiff a letter signifying approval (dated August 19, 1970). Contemporaneously, plaintiff was notified that the effective date of his RIF reassignment in lieu of separation was changed to September 6, 1970, rather than August 23, 1970.

Later, on September 3, 1970, when plaintiff's disability retirement was supposedly to go into effect, the RIF reassignment notice of June 19, 1970, was canceled and plaintiff was informed he would remain in the position of staff car operator. Simultaneously, the Air Force officials determined that plaintiff was physically unfit for the position of staff car operator (his old position) for the same reasons he could not hold a mess attendant position (inability to perform the lifting duties associated with the staff car operator position). Thus, in spite of plaintiff's request that he be allowed to resume his position as a staff car operator, he was cleared from Griffiss Air Force Base on the morning of September 3, 1970.

Soon after plaintiff was cleared from the air base, he was notified that the notice of approval of his disability retirement request had been inadvertently sent in August and, instead, that his request had been rejected. Accordingly, the subject disability retirement would not go into effect. Plaintiff's application was resubmitted to the CSC, however, for consideration based upon the fact that plaintiff had been found physically unfit for the position of staff car operator on September 4, 1970.

On October 7, 1970, plaintiff was notified by the CSC Bureau of Retirement, Insurance and Occupational Health that his application for disability retirement based on his physical disqualification for the position of staff car operator was disallowed.

On October 21, 1970, plaintiff appealed the disapproval of his application for disability retirement to the CSC New York Regional Office. After an examination of the medical records that were before the CSC Bureau of Retirement, Insurance and Occupational Health and the additional statement and examination report submitted by plaintiff, the New York Regional Office denied plaintiff's appeal on February 3, 1971. The New York Region found that to the extent plaintiff's application was based on claimed disabilities involving his left knee, left ankle, left elbow, and varicose veins, "the file fails to show evidence establishing substantial physical disabilities in those respects sufficient to constitute total disability for useful and efficient service." With respect to plaintiff's hernia condition which restricted his lifting or carrying heavy weights, the New York Regional Office found it was a condition which had been present since 1956, predating his employment at Griffiss Air Force Base as a staff car operator.

Plaintiff's subsequent appeal to the CSC Board of Appeals and Review was rejected also on May 17, 1970, on the grounds that the hernia condition predated his employment at Griffiss Air Force Base.

Plaintiff was notified on June 10, 1971, that pursuant to a second reduction-in-force (RIF–II) he was to be separated from the position of staff car operator effective August 13, 1971. The RIF–II notice informed plaintiff of his appeal rights and also of the fact that he was not being allowed to bump employees with less retention rights due to his physical disability to perform the duties of a staff car operator. Plaintiff was separated from the position of staff car operator on August 13, 1971. Plaintiff did not appeal the RIF–II action to the CSC.

On December 24, 1975, plaintiff filed the present petition seeking review of the CSC

denial of his disability retirement claim and of the Air Force action of not allowing him to return to the staff car operator position on September 3, 1970, and eventually separating him from that position.

Plaintiff's petition presents the court with the alternative contentions that either (1) the CSC erred in denying plaintiff's disability retirement application which was based upon the staff car operator position or (2) the Air Force acted arbitrarily, capriciously, and without substantial evidence in separating plaintiff from his staff car operator position due to physical disability. Plaintiff argues he is entitled to recover under at least one of the contentions. We do not agree.

The CSC is initially charged with the task of determining disability retirement and dependency questions and its decisions "concerning these matters are final and conclusive and not subject to review." 5 U.S.C. § 8347 (1976). In *Scroggins v. United States*, 184 Ct.Cl. 530, 533–534, 397 F.2d 295, 297, *cert. denied*, 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968), we noted that "[t]his is a special and unusual restriction on judicial examination, and under it courts are not as free to review Commission retirement decisions as they would be if the 'finality' clause were not there." In the past we have followed the rule that at best a court can set aside the CSC determination "only where there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error 'going to the heart of the administrative determination.' " [3] *Gaines v. United States*, 158 Ct.Cl. 497, 502, *cert. denied*, 371 U.S. 936, 83 S.Ct.

309, 9 L.Ed.2d 271 (1962); *Scroggins v. United States, supra; McFarland v. United States*, 207 Ct.Cl. 38, 48–49, 517 F.2d 938, 944 (1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976).

Plaintiff does not allege any violation of important procedural rights. Nor does plaintiff argue that the CSC misconstrued the governing legislation.[4] Plaintiff's contention is that in considering his application for disability retirement the CSC made an error "going to the heart of the administrative determination." Specifically, plaintiff argues the CSC did not properly consider and weigh all the relevant evidence of plaintiff's left knee condition and the degree it hampered his job-related duties.[5] Had the CSC done so, according to plaintiff, it would have found that plaintiff was totally disabled for useful and efficient service and, therefore, entitled to disability retirement.

The evidence which plaintiff contends the CSC overlooked or disregarded is various 1970 and 1971 Veterans Administration (VA) records showing the existence and severity of plaintiff's left knee condition and the eventual granting of a 20 percent VA disability rating for the condition. Plaintiff argues these records are especially pertinent in view of the fact that the July 2, 1970, medical report, upon which the CSC determination was based, had a "?" inserted after the item "Both Legs Required." Plaintiff has also filed two affidavits in this court to support the claim that his left knee condition adversely affected his performance as a staff car operator as early as 1970.[6]

3. We reject without further comment defendant's contention that 5 U.S.C. § 8347(c) precludes this court from judicially reviewing CSC disability determinations under the above standard of review.

4. At pages 100–101 of plaintiff's main brief, he attempts to argue that the CSC applied the wrong legal standard in rejecting plaintiff's disability retirement application. To the extent that plaintiff intended this to be a contention in addition to his contention of an error "going to the heart of the administrative determination," we find it without merit.

5. Regarding his disability application, plaintiff's contentions are based solely on his left knee condition. Plaintiff does not contend that the CSC erred in holding his hernia condition predated his employment at Griffiss Air Base in 1959.

6. Since we find *infra*, after carefully considering plaintiff's additional evidence, that the CSC did not act contrary to law in denying plaintiff's disability retirement claim, we need not reach the defendant's contention that in reviewing the CSC determination we are limited to the CSC record.

We find the VA records and affidavits presented by plaintiff do not demonstrate an error "going to the heart of the administrative determination." The affidavits which plaintiff filed for the first time in this court at most establish that during the last year plaintiff worked at Griffiss Air Base his left knee was sometimes bothersome. Nor do the VA records show more. Plaintiff's left knee condition was not even rated until July 2, 1971, and then only at 20 percent.[7] A 20 percent disability is only a moderate disability under VA standards. See 38 C.F.R. § 4.71a, code 5257 (1977). A moderate disability under the VA standards does not necessarily equal total disability for useful and efficient service for purposes of federal disability retirement law.

Nor do we find that the Air Force acted arbitrarily, capriciously, or without substantial evidence when it placed plaintiff on leave without pay (LWOP) status on September 4, 1970, pending reprocessing of his disability application. It is indisputable that plaintiff's hernia condition physically disqualified him from working as a staff car operator due to his inability to perform lifting duties. The Air Force made this determination on September 4, 1970. In addition, plaintiff was also claiming at this time that he could not perform the duties of a staff car operator due to his left knee condition. Accordingly, the Air Force placed plaintiff on LWOP status pending the processing of his disability retirement application. This course of action was the one specifically prescribed by the Federal Personnel Manual Supp. 831–1, Subch. S10–5(a). It is also one that seems eminently reasonable. To require a person who is potentially totally disabled to continue to work would be dangerous to co-workers as well as the disabled employee. At the same time, it would be unreasonable to allow the disabled employee to be maintained on the payroll when not actually performing on the job.

Finally, we find that plaintiff has failed to exhaust his administrative remedies before seeking judicial review of his ultimate separation from the staff car operator position pursuant to the RIF–II. Plaintiff received the RIF–II notice on June 10, 1971. It notified him of his separation effective August 13, 1971, that he was not being allowed to bump two employees with less retention rights due to his medical condition, and of his right to appeal the RIF–II action to the CSC. Plaintiff never filed an appeal with the CSC and he was separated on August 13, 1971. Such a failure to appeal to the CSC precludes review by this court absent mitigating factors. *Wilmot v. United States*, 205 Ct.Cl. 666, 680–681 (1974).

None of the mitigating factors assigned by the plaintiff in this case has merit. The RIF–II notice stated that he was being separated from the staff car operator position effective August 13, 1971. In view of this express notice, plaintiff can hardly maintain that he considered himself separated as of September 3, 1970. Nor does the fact that the RIF–II was extraordinary in that plaintiff was not allowed to bump employees with less retention rights give rise to a mitigating circumstance. Indeed, the opposite would seem to be the case due to the seemingly contradictory actions of the Government regarding this plaintiff. On May 17, 1971, the CSC had determined that plaintiff was not totally disabled for useful and efficient service. Yet approximately 25 days later, the plaintiff was informed in the RIF–II notice that he was too physically disabled to be allowed normal retention rights in a RIF action. Certainly by June 10, 1971, plaintiff was apprised of this contradictory governmental action— the same action of which he complains here. Yet, he did not appeal the second part of the action to the CSC.

Unfortunately for this plaintiff, he was not sufficiently disabled when he left government service to be entitled to disabil-

---

7. When it was rated, the rating was made retroactive to February 24, 1970. See Plaintiff's Exhibit 56.

ity retirement. However, he was sufficiently disabled to lose his retention rights in a RIF action and, thus, be removed from the government service. The reason is, as this court pointed out in *Piccone v. United States*, 186 Ct.Cl. 752, 763, 407 F.2d 866, 872 (1969), that different standards are used in making the different determinations.

### CONCLUSION

For the foregoing reasons, we grant defendant's motion for summary judgment, deny plaintiff's cross motion for summary judgment, and order the petition dismissed.

