James H. TURNER, Petitioner,

v.

OFFICE OF PERSONNEL MANAGE-
MENT, Respondent.

No. 82–1436.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 19, 1983.

Decided May 17, 1983.

Michael J. Kator, Washington, D.C., with whom Irving Kator and Joseph B. Scott, Washington, D.C., were on the brief, for petitioner.

Ann S. Duross, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for respondent.

Before WALD, MIKVA and BORK, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

Petitioner Dr. James H. Turner seeks review of a final order of the Merit Systems Protection Board (MSPB or Board) denying his application for voluntary disability retirement. At issue is the Board's determination that petitioner's unusual medical condition—an acute aversion to enclosed places caused by chronic diarrhea—is not a "disease" within the meaning of the statutory disability retirement scheme, *see* 5 U.S.C. § 8331(6) (1976) (disability must be caused by "disease or injury"). Because the legal basis of the Board's determination is unclear, we remand to the MSPB for a more comprehensible rationale for its action in this case.

## I. BACKGROUND

### A. *The Factual Basis of Petitioner's Claim*

Before his separation from federal service, Dr. Turner was a chemical engineer with the Environmental Protection Agency (EPA). Specifically, petitioner's job at EPA entailed the development and administration of nationwide programs to control and prevent air pollution from emitted particulate matter. As part of his duties, petitioner was required to travel frequently, often with minimal advance notice, throughout the nation and occasionally abroad.

In 1977, petitioner began to experience the unpleasant effects of chronic diarrhea and intestinal cramping associated with the diarrhea. Because of this malady, it became important for petitioner to have ready access to a restroom and, as fate would have it, petitioner's diarrhea was exacerbated by the extreme anxiety he felt when he did not have such access. In particular, he developed an adverse psychosomatic reaction to travel on commercial aircraft, where access to restrooms cannot be guaranteed at all times. This aspect of petitioner's condition severely affected his ability to perform the travel required by his job. Petitioner requested reassignment to a position that did not require air travel, but his request was denied because no such position could be found. Although petitioner's supervisor was sympathetic to petitioner's plight, he nonetheless became increasingly dissatisfied with petitioner's impaired work performance. In 1980, with his supervisor's support, petitioner applied for voluntary disability retirement pursuant to 5 U.S.C. § 8347 (1976).

Accompanying Dr. Turner's application for disability retirement were statements by two doctors and petitioner's supervisor. In one of the medical statements, Dr. Robert Harper diagnosed petitioner's condition as, "[p]sychophysiological gastrointestinal reaction characterized by intermittent diarrhea. *Phobic neurosis, fear of flying* in commercial aviation or of being in any situation in which he does not have immediate access to a bathroom." Statement of Dr. Robert N. Harper, *reprinted in* Joint Appendix (JA) 36. In a second medical statement, Dr. Willard Pierson stated that "Mr. Turner's diarrhea is aggravated by flying commercially, and he tends to have very urgent diarrhea before and during these flights." Statement by Dr. Willard C. Pierson, *reprinted in* JA 38. The statement by petitioner's supervisor indicated the work-related effects of petitioner's medical condition: "Dr. Turner cannot handle the extensive duties required in developing and administering extramural contract, grant, cooperative, and interagency R & D programs because he is unable, due to his disability, to perform the required travel within the U.S.

and overseas either totally or on the necessary timely basis." Superior Officer's Statement, *reprinted in* JA 34.

### B. *The Procedural History of Petitioner's Claim*

Approximately three months after submitting his application for disability retirement to the Office of Personnel Management (OPM), petitioner received a letter from OPM stating that his application had been disapproved because "[a] careful review . . . of all evidence submitted in your case fails to establish that you have a disability severe enough to prevent useful, efficient, and safe performance of the essential duties of the position from which you are seeking retirement." Letter from Retirement Claims Division, OPM, to James H. Turner (June 4, 1980), *reprinted in* JA 25. Petitioner requested that OPM reconsider its decision but, upon reconsideration, OPM sustained its initial decision stating:

> [Your] [m]edical evidence includes the following: The reports diagnose psycho-physiological gastro intestinal reathon. The examinations reveal no objective pathological findings of sufficient severity to warrant total disability award. This condition seems to be under appropriate treatment and hopefully [crossed out] is manageable. It is also noted that your problems are situational in nature rather than an inherent disease.

Letter from George Smith to James H. Turner (Nov. 10, 1980), *reprinted in* JA 18, 18–19. By the time petitioner received OPM's reconsideration decision, he had been forced to resign from his position at EPA because of his inability to perform his job. *See* Memorandum from J.H. Abbott to J.H. Turner (Jan. 28, 1980), *reprinted in* JA 75.

Petitioner appealed OPM's final decision to the MSPB, but, in April 1981, the Board's presiding official affirmed OPM's final decision. Although the presiding official disagreed with OPM's finding that petitioner's condition was "manageable," he otherwise agreed with OPM's conclusion that petitioner did not have the type of medical condition that qualified for disability retirement:

Moreover, the evidence of record does not reveal whether the diarrhea is amebic or bacillary. While the appellant may have had episodes of diarrhea due to an amebic or bacillary infection, the evidence of record indicates that at present, his diarrhea is caused by stress, and that stress comes about when he is faced with the prospect of traveling by commercial airplane. In other words, the appellant's initial problems with diarrhea, led to a fear of flying, which in turn now, when faced with flying causes aggravation of the condition. In short, the appellant's diarrhea now is due to fear of flying.

OPM's finding that the appellant's problems are situational rather than an inherent disease are supported by the facts of this case and there is no precedent for awarding disability retirement based on an individual's phobias.

*Initial Decision, reprinted in* JA 79, 85. Petitioner requested the full Board to review the presiding official's decision, but, in March 1982, the Board denied this request. Although the Board felt that the presiding official had misstated the applicable burden of proof, it nevertheless agreed with the "ultimate conclusion set forth in the initial decision." *MSPB Opinion and Order, reprinted in* JA 109, 110. Accordingly, the Board allowed the presiding official's decision to become the final decision of the MSPB. *Id.* Petitioner seeks judicial review of this final decision.

### II. JUDICIAL REVIEW

As a threshold matter, OPM challenges the jurisdiction of this court to review final determinations of the MSPB in voluntary disability retirement cases. In framing its challenge, OPM does not deny that the Civil Service Retirement Act, 5 U.S.C. §§ 8331–8348 (Supp. V 1981), allows individuals to appeal OPM's rejection of their disability retirement claims to the MSPB, *id.* § 8347(d)(1), or that the MSPB may conduct de novo review of such claims, *see* 5 U.S.C. § 7701(a), (b) (Supp. V 1981); *Chavez v. OPM*, MSPB slip op. at 10–11, No. DA 831L09003 (May 28, 1981). Nor

does OPM deny that, as a general matter, section 7703 of the Civil Service Reform Act of 1978, 5 U.S.C. § 7703 (Supp. V 1981), provides the federal courts of appeals and the United States Court of Claims with a broad jurisdictional grant to review final MSPB decisions that adversely affect or aggrieve any federal employee, *id.* § 7703(a)(1), (b)(1); *see also* 28 U.S.C. § 2342(6) (Supp. V 1981) (conforming grant of jurisdiction to courts of appeals covering all final orders of the MSPB). Instead, OPM contends that the scope of section 7703 is limited by the "finality" clause of section 8347(c) of the Civil Service Retirement Act:

> The Office [of Personnel Management] shall determine questions of disability and dependency arising under this subchapter.... *[T]he decisions of the Office concerning these matters are final and are not subject to review.*

5 U.S.C. § 8347(c) (Supp. V 1981) (emphasis added). In OPM's view, the specific finality clause of section 8347(c) controls the general jurisdictional grant of section 7703 and precludes all judicial review of MSPB or OPM determinations.

We approach OPM's argument with a deliberate measure of skepticism: "[o]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) (quoting *Rusk v. Cort,* 369 U.S. 367, 369, 380, 82 S.Ct. 787, 788, 794, 7 L.Ed.2d 809 (1962)); *see Carter v. Cleland,* 643 F.2d 1, 3–4 (D.C.Cir.1980). Under this standard, we think that the finality clause of section 8347(c) cannot bear the weight which OPM seeks to place on it. In context, the finality clause is aimed at preserving for OPM or MSPB the exclusive right to determine the underlying factual bases of disability and dependency claims. Thus, the sentence immediately following the finality clause 8347(c) provides that "[t]he Office may direct at anytime such medical or other examinations as it considers necessary to determine the facts concerning disability or dependency of an individual re-

ceiving or applying for annuity under this subchapter." 5 U.S.C. § 8347(c). In contrast, the judicial review provisions of section 7703 are concerned with far more than the underlying factual basis of the agency's decision. In addition to the requirement that courts set aside MSPB decisions not supported by substantial evidence, 5 U.S.C. § 7703(c)(3), courts are required to set aside agency action found to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [and] (2) obtained without procedures required by law, rule, or regulation having been followed ...," 5 U.S.C. § 7703(c)(1), (2). Accordingly, the finality clause of section 8347(c) would seem compatible, in context, with judicial review of MSPB disability decisions that was confined to non-factual matters—i.e., restricted solely to review for procedural infirmities or for decisionmaking that was irrational or not in accordance with law.

We are not alone in noting the important qualitative differences in scope between sections 8347(c) and 7703. Beginning in *Scroggins v. United States,* 148 Ct.Cl. 530, 397 F.2d 295 (Ct.Cl.), *cert. denied,* 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968), the Court of Claims has consistently interpreted the finality clause to bar review of the factual findings of the Civil Service Commission (now OPM), but not to preclude courts from setting aside administrative decisions "where there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error 'going to the heart of the administrative determination.'" *Id.* at 297, *quoting Gaines v. United States,* 158 Ct.Cl. 497, 502, *cert. denied,* 371 U.S. 936, 83 S.Ct. 309, 9 L.Ed.2d 271 (1962); *see Polos v. United States,* 223 Ct.Cl. 547, 621 F.2d 385, 391–92 n. 9 (Ct.Cl.1980); *Fancher v. United States,* 218 Ct.Cl. 504, 588 F.2d 803, 806 (Ct.Cl.1978); *Allen v. United States,* 571 F.2d 14, 17 (Ct.Cl.1978); *McFarland v. United States,* 517 F.2d 938, 942–43 (Ct.Cl.1975), *cert. denied,* 423 U.S. 1049, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976); *McGlasson v. United States,* 184 Ct.Cl. 542,

397 F.2d 303, 307 (Ct.Cl.1968); *see also Washington v. Jacobs,* 458 F.2d 785, 787 (D.C.Cir.), *cert. denied,* 409 U.S. 895, 93 S.Ct. 161, 34 L.Ed.2d 153 (1972) (holding factual inquiries precluded by *Scroggins*); *Smith v. Dulles,* 236 F.2d 739, 742 (D.C.Cir. 1956) (construing statutory predecessor to section 8347(c) to permit same scope of review). Indeed, the MSPB itself has acknowledged that *Scroggins*-type judicial review is consistent with its own interpretation of the finality clause of section 8347(c). *See Chavez v. OPM,* MSPB slip op. at 8–9.

Nevertheless, OPM insists that the *Scroggins* line of authority is wrongly decided and posits as "clear and convincing evidence" of Congress' contrary intent a recent amendment to section 8347. In 1980, Congress provided for judicial review of agency-initiated (as opposed to employee-initiated) disability cases resulting in factual findings of an employee's mental disability by adding to the finality clause in section 8347(c) the caveat *"Except to the extent provided under subsection (d) of this section,"* and by adding a new section 8347(d)(2):

> In the case of any individual found by [OPM] to be disabled in whole or in part on the basis of the individual's mental condition, and that finding was made pursuant to an application by an agency for purposes of disability retirement under § 8337(a) of this title, the procedures under § 7701 of this title shall apply *and the decision of the Board shall be subject to judicial review under § 7703 of this title.*

Pub.L. No. 96–500, 94 Stat. 2696 (1980) (codified at 5 U.S.C. § 8347(c), (d)(2) (Supp. V 1981)) (emphasis added). OPM suggests that Congress' original intent to foreclose all judicial review in section 8347(c) can thus be inferred from Congress' subsequent provision of a specific exception in section 8347(d)(2); if section 8347(c) had already permitted judicial review, OPM concludes, section 8347(d)(2) would have been unnecessary.

In its enthusiasm to develop this sweeping negative implication, however, OPM ignores the specific indicia of congressional intent that accompanied the 1980 amendment. The purpose of the 1980 amendment was to prevent involuntary disability retirement proceedings from being misused to force unpopular employees out of active service for reasons of mental incompetency. *See* H.R.Rep. No. 1080, 96th Cong., 2d Sess. 2–3 (1980); 126 Cong.Rec. H5023 (daily ed. June 16, 1980) (remarks of Rep. Spellman). To check this possibility of misuse, Congress expanded the scope of judicial review beyond the *Scroggins* level, for this one class of disability determinations, to include the traditional "substantial evidence" review of section 7703. *See* S.Rep. No. 1004, 96th Cong., 2d Sess. 2, *reprinted in* 1980 U.S. Code Cong. & Ad.News 5986, 5987. Given that the sole purpose of the amendment was to expand judicial protection of employees through review of factual findings in a certain subset of cases, it hardly follows that Congress negatively implied its intent to strip employees of *Scroggins*-type review in other cases. To the contrary, the committee report accompanying the House-passed version of the amendment expressly acknowledged the viability of *Scroggins* and its progeny by stating that the "bar to judicial review" which made the amendment necessary was that articulated by the Court of Claims in *Scroggins, McGlasson v. United States,* and *McFarland v. United States. See* H.R.Rep. No. 1080, 96th Cong., 2d Sess. 4 (1980). This view, moreover, was confirmed by the Director of OPM himself, who wrote to Congress at the time of the amendment's consideration:

> We believe that it is reasonable and proper to restrict *expanded* judicial review to voluntary disability retirements.... It is appropriate, therefore, that OPM decisions on voluntary applications be conclusive, *reviewable only to determine whether there has been substantial procedural error, misconstruction of governing legislation, or some like error going to the heart of the administrative determination.*

Letter of Alan K. Campbell, Director, OPM, to Rep. Hanley (May 14, 1980), H.R.Rep. No. 1080, *supra,* at 7–9 (emphasis added);

see also Letter of Alan K. Campbell, Director, OPM, to Senator Ribicoff (Sept. 25, 1980), S.Rep. No. 1004, *supra,* 4–5. Although OPM apparently has since changed its mind about the appropriate interpretation of section 8347(c), we think that far more deference is due the agency's contemporaneous explanation of the statute's effect than is due its present post-hoc litigating position, *see generally Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Indeed, OPM's present position was flatly contradicted by the MSPB's advice to petitioner at the bottom of its Opinion and Order in this case: "Appellant is hereby notified of the right to seek judicial review of the Board's action as specified in 5 U.S.C. § 7703." JA 110.

Although it seems clear that OPM has failed to produce the clear and convincing evidence necessary to foreclose judicial review, we are aware that other courts of appeals have split on the question. In *Morgan v. OPM,* 675 F.2d 196 (8th Cir.1982), the Eighth Circuit accepted the interpretation of section 8347 urged by OPM in this case. Relying largely on the 1980 amendment's appearance of a negative implication, and selective references to the "bar against judicial review" in the legislative history, the *Morgan* court rejected the Court of Claims' *Scroggins* cases and concluded that section 8347 completely precludes judicial review of voluntary disability retirement decisions. *Id.* at 200–01. *See also Campbell v. OPM,* 694 F.2d 305 (3d Cir.1982) (following *Morgan* ). In *Parodi v. MSPB,* 690 F.2d 731 (9th Cir.1982), however, the Ninth Circuit criticized the *Morgan* court for misreading the legislative history, *id.* at 735, and, for many of the same reasons that we have outlined above, concluded that "judicial review of voluntary disability determinations is available where there has been a substantial departure from important procedural rights, a misconstruction of the governing statute, or some like error going to the heart of the administrative determination," *id.* at 737. *See also McCard v. MSPB,* 702 F.2d 978 (11th Cir.1983) (following *Parodi* ). Suffice it to say that our views on jurisdiction, reviewability, and the applicable scope of review are compatible with those of the Ninth Circuit in *Parodi.*

## III. DISABILITY

■ We come then to the merits of petitioner's argument—that OPM and MSPB unjustifiably belittled the disabling characteristics of petitioner's unusual medical condition and therefore erred in concluding that he was not disabled within the meaning of the Civil Service Retirement Act (the Act). At the time of petitioner's application for disability retirement (February 1980), the Act contained the following definitions:

"disabled" and "disability" mean totally disabled or total disability, respectively for useful and efficient service in the grade or class of position last occupied by the employee or member because of disease or injury not due to vicious habits, intemperance, or willful misconduct on his part within 5 years of becoming so disabled.

5 U.S.C. § 8331(6) (repealed 1981). Petitioner argues that he meets these definitional requirements given that the sole evidence in the administrative record are the statements by two doctors indicating a "disease or injury" and the statement by his supervisor indicating that, due to this medical condition, petitioner could not perform the necessary functions of his job.

The Government responds that petitioner does not have the type of "disease" for which disability retirement can be awarded. Respondent's Brief at 23. This conclusion is drawn from the administrative determinations of OPM and MSPB that "[t]he [medical] examinations reveal no objective pathological findings of sufficient severity to warrant total disability award," OPM Decision on Reconsideration, *reprinted in* JA 18–19; "appellant's diarrhea now is due to fear of flying . . . and there is no precedent for awarding disability retirement based on an individual's phobias," MSPB Initial Decision, *reprinted in* JA 85; and "OPM's finding that the appellant's problems are situational rather than an inherent disease are [sic] supported by the facts . . . .," *id.* Al-

though we recognize that these administrative determinations reflect mixed findings of fact and conclusions of law, it appears that the ultimate conclusions of both agencies share a common flaw: they impose on claimants seeking disability retirement legal burdens beyond those imposed by the definitional requirements of 5 U.S.C. § 8331(6).

First, OPM's emphasis on the lack of "objective pathological findings," JA 18–19, and MSPB's concern with the unknown etiology of petitioner's medical condition, JA 85 ("the evidence of record does not reveal whether the diarrhea is amebic or bacillary"), are difficult to square with the MSPB's recently announced de-emphasis of the importance of objective medical evidence. *In Chavez v. OPM,* No. DA 831L09003 (May 28, 1981), a decision on which the Board in this case otherwise placed considerable weight, the Board held that there was nothing "in sections 8331(6), 8347, or 7701 [which] requires us to conclude that a disability retirement claim on appeal before us must be established solely by objective medical evidence." *Chavez,* slip op. at 23–24. The *Chavez* decision, moreover, is consistent with OPM's general recognition that an employee may be disabled within the meaning of 5 U.S.C. § 8331(6) when the employee's illness is exclusively "mental or emotional," *see* 5 C.F.R. § 831.1203 (1982), and is also consistent with the plethora of court decisions striking down the indispensability of objective medical evidence under the even more rigorous disability insurance benefits provision of the Social Security Act, 42 U.S.C. § 423(d) (1976), *see, e.g., Ragsdale v. Secretary, Dep't of Health, Education, & Welfare,* 623 F.2d 528, 530 (8th Cir.1980); *Marcus v. Califano,* 615 F.2d 23, 27–28 (2d Cir.1979); *Page v. Celebrezze,* 311 F.2d 757, 762–63 (5th Cir.1963).

Second, the agencies' denigration of petitioner's "phobia" as being insufficiently severe to justify disability retirement effectively reads into the definition of disability an element of "seriousness" that is nowhere found in 5 U.S.C. § 8331(6). Rather than measure the disabling nature of a disease by any abstract notion of "seriousness," the

language of section 8331(6) defines "disability" solely in terms of rendering an employee incapable of "useful and efficient service" in the employee's *specific* position (providing the disease was not due to the employee's vicious habits, intemperance, or willful misconduct within five years of becoming disabled). *See Cerrano v. Fleishman,* 339 F.2d 929, 931 (2d Cir.1964), *cert. denied,* 382 U.S. 855, 86 S.Ct. 106, 15 L.Ed.2d 93 (1965) (emphasizing the position-specific nature of disability); *cf.* 5 C.F.R. § 831.502(a) (1983) (employing same definition of "disability"); Federal Personnel Manual, 1981 Supplement 831–1, S10–1b (same); OPM Pamphlet 18, *Your Retirement System* § F–19, at 17 (June 1979) (total disability means "inability of the employee, because of disease or injury, to satisfactorily and efficiently perform the duties of the position occupied or the duties of a similar position. It need not be shown that the applicant is disabled for all kinds of work."). Accordingly, if petitioner's chronic diarrhea in fact made it impossible for him to carry out the necessary functions of his position, he would seem to fit analytically within the statutory definition. The attempt by OPM and MSPB to disparage petitioner's medical condition as a mere "phobia" not only ignores the physical manifestation of petitioner's disease but also overlooks the fact that phobic reactions are clinically defined as mental illnesses, *see American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders* 225–34 (3d ed. 1980); equally compelling, OPM has never before suggested that phobias, as a class, are excluded from the statute's coverage of disabling mental diseases, *see, e.g., Your Retirement System, supra,* § F–21, at 17 ("May disability annuity be based on any disease or injury? No. It may not be based on a disability of short duration, or on disability due to vicious habits, intemperance, or willful misconduct on the employee's part within the 5-year period before becoming disabled.").

Finally, the agencies' conclusion that petitioner's condition is "situational," and therefore not an "inherent disease," seems

**1506**

to constitute no more than a shorthand reiteration of their earlier views that petitioner's condition is merely phobic, unsupported by objective pathological findings, or otherwise not serious enough to be disabling. To the extent OPM also meant to include within this conclusion its findings that Dr. Turner's condition was manageable, we note that the Board's presiding official specifically rejected this finding as unsupported by the medical evidence. The larger defect in the agencies' analyses, however, is that they overlook the fact that the statutory definition of disability is itself "situational," varying with the effects of a disease or injury on different employees' specific positions. In *Chavez v. OPM,* for example, the Board held that a forestry technician's extreme allergic reaction to dust and smoke might constitute a disabling disease to an employee whose job entailed forest firefighting, *Chavez,* slip op. at 30, while implying that such a disease might not be disabling to an employee whose job entailed a larger portion of inside office work, *id.* at 3. In *Parodi v. MSPB,* 690 F.2d 731 (9th Cir.1982), the Ninth Circuit confronted the inverse situation. The claimant in *Parodi* was a federal office worker whose asthmatic bronchitis made it impossible for her to work inside an office where cigarette smoking occurred. *Id.* at 737. Although the claimant could perform her work in a smoke-free environment, the court held that she fit within the definitional prerequisites of 5 U.S.C. § 8331(6) because:

> She is as disabled for her job at her assigned worksite as she would be had she actually suffered permanent and severe chronic bronchitis or another physically debilitating disease. She cannot perform her job, not due to a choice or bad habits, but due to a disease which limits the environment in which she can work.

690 F.2d at 738. The MSPB's approach in *Chavez* and the Ninth Circuit's approach in *Parodi* comport with the statutory definition of disability and undermine the agency's "situational" rationale in the present case.

CONCLUSION

We remand the case to the Board. Although the Government's disapproval of petitioner's application for disability retirement is without defensible rationale, we are debarred from moving to the merits of petitioner's case. The extremely narrow limits of *Scroggins*-level judicial review vouchsafes factual determinations concerning disability retirement to OPM and, upon appeal under 5 U.S.C. § 7701, to the MSPB. Our province extends no further than to correct misapplications of governing legislation that go to the heart of the administrative determination. We have no doubt that such statutory misconstructions have occurred here. But it is for the Board on remand to engage in a de novo redetermination of petitioner's qualification for disability retirement under the proper statutory definition of "disabled" and "disability." We caution the Board that, upon reassessment, it may not deny petitioner's claim merely because he suffers in part from a medically-diagnosed "phobia" that may make commercial air travel impossible. Nor may the Board deny petitioner's claim solely because he cannot prove the etiology and extent of his medical condition by objective medical evidence. Rather, as the Board itself noted in *Chavez,* slip op. at 28–29, objective clinical evidence is but one of the elements of proof to be considered, along with diagnoses and expert medical opinions, subjective evidence of disability, and all evidence relating to the effect of petitioner's condition upon his ability to perform in the grade or class of position he last occupied.

*It is so ordered.*