David PEELE

v.

The UNITED STATES.

No. 442–82C.

United States Claims Court.

Sept. 29, 1983.

**420**

David B. Schultz, Norfolk, Va., for plaintiff; Robert M. White, Norfolk, Va., of counsel.

M. Susan Burnett, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## OPINION

MARGOLIS, Judge.

This civilian pay case is before the Court on cross motions for summary judgment, submitted with oral argument. Plaintiff, David Peele, a former machinist with the Department of the Navy, Naval Air Rework Facility (NARF), Norfolk, Virginia was removed from employment on April 7, 1978 due to a fourth offense of unexcused lateness to work. Alleging that his removal was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and contrary to law, plaintiff seeks reinstatement, back pay, costs and attorney's fees.

Plaintiff contends that he was wrongfully removed because a mental illness caused him to engage in the acts which resulted in his removal.[1] Specifically, plaintiff alleges that he was suffering from schizophrenia,

that NARF officials had notice of this condition, and that despite this notice NARF failed both to grant plaintiff another fitness-for-duty examination at the time of his proposed removal and to file for disability retirement on his behalf prior to removal[2], in violation of Navy regulations. Finally, plaintiff contends that the decisions of the Merit Systems Protection Board (MSPB) in his case were arbitrary and capricious.

Defendant contends that plaintiff's removal was in accordance with applicable statutes and regulations, was not arbitrary or capricious but was supported by substantial evidence, and that the MSPB acted properly. This Court holds for the defendant.

On January 24, 1978 NARF sent plaintiff a written notice of proposed removal to become effective thirty days from receipt. The contemplated removal was based both on a fourth offense of unexcused tardiness on December 20, 1977 and on plaintiff's past disciplinary record. Plaintiff had been twice suspended in 1976 for leaving his employment during work hours without permission, inattention to duty, and unexcused tardiness. Plaintiff had also received two written reprimands in August 1976 and November 1977 for unexcused tardiness. Another suspension had been imposed on plaintiff in October 1977 for unauthorized use of government equipment, knowingly making a false statement to a supervisor, and unauthorized presence on government property. Plaintiff's explanation for all the offenses of tardiness was that he had overslept. In addition to disciplinary actions, plaintiff's immediate supervisor Robert B. Turner, the Branch Superintendent, and the Division Director, Ernest F. Kerekes, frequently counseled plaintiff on his disciplinary problems. Written notice of all the above infractions was provided, advising plaintiff that future offenses might cause him to be subject to more severe punishment. Plain-

1. In the administrative proceedings plaintiff alleged that his removal resulted from discrimination based on a mental handicap. At oral argument before this Court, plaintiff abandoned this allegation.

2. Plaintiff could have filed for disability retirement on his own behalf within one year after removal. 5 C.F.R. 831.501(c) (1978).

tiff signed all these notices, acknowledging their receipt.

Accompanied by a union representative, plaintiff made both oral and written reply to the proposed removal before J.B. Cherry, Production Department Head, NARF. This reply included a letter dated February 21, 1978 from psychiatric social worker Judith Wilkins (Wilkins letter). This letter stated that plaintiff had "sought treatment for a problem of chronic lateness to work following a letter recommending his termination from employment." The Wilkins letter contained no diagnosis of plaintiff's condition, but stated that plaintiff was "scheduled for further diagnostic psychological testing in order to determine more precisely the nature and severity of his difficulty." The letter also stated that "it was recommended to Mr. Peele that he begin weekly individual psychotherapy, he accepted this recommendation, and treatment has already begun." Administrative Record (AR) at 9. On March 24, 1978 plaintiff was notified in writing of the decision to remove him to promote the efficiency of the service, effective April 7, 1978. Plaintiff appealed this decision to the U.S. Civil Service Commission Federal Employee Appeals Authority, Philadelphia Field Office (now the MSPB)[3], on April 18, 1978. After subsequent notification as to alternative appeal procedures, plaintiff elected to pursue his appeal under adverse action procedures before the Department of the Navy. 5 C.F.R. §§ 772.101 et seq. (1978). Accordingly, an Equal Employment Opportunity (EEO) investigator was assigned to investigate plaintiff's complaint. Upon consideration of the record on appeal, the report of plaintiff's 1976 fitness-for-duty examination[4], affidavits of NARF officials involved in the removal decision,

all disciplinary actions against others taken in plaintiff's department for one year immediately preceding the action against plaintiff, and a letter of January 27, 1979 containing a diagnosis of plaintiff's psychiatric condition by psychiatrist Dr. Robert H. Thrasher, the EEO investigator found that there was no discrimination in plaintiff's removal and that plaintiff's disciplinary record (ten infractions during the proceeding 20 months) served as the basis for removal. EEO Investigation Report (April 30, 1979), AR at 115–121.

After waiving his right to a hearing, plaintiff appealed the findings of the EEO investigator to the MSPB. The MSPB St. Louis Field Office affirmed the removal decision on August 31, 1979. On October 2, 1979 plaintiff requested reconsideration. On January 10, 1980 plaintiff provided the MSPB Office of Appeals Review with another letter dated January 8, 1980 from Dr. Thrasher containing information on plaintiff's psychiatric condition. Plaintiff contended that this letter was new evidence, thereby meriting reconsideration by the MSPB. This request was responded to by NARF on February 26, 1980 and was denied by the MSPB on September 12, 1980. The MSPB concluded that plaintiff had not provided new and material evidence sufficient to require reconsideration. Plaintiff brought the instant action on September 3, 1982.

 In civilian pay cases this Court's scope of review is limited. Administrative action is reviewed only to ensure that there was compliance with applicable statutes and regulations, and that such action was not arbitrary, capricious, or unsupported by

---

**3.** No decision was issued by the Federal Employee Appeals Authority prior to the January 11, 1979 effective date of the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (Reform Act). Under the Reform Act the Appeals Authority was replaced by the MSPB. However, this suit is not governed by the Reform Act as plaintiff's employment was terminated prior to the effective date of that Act. Gintel v. United States, No. 158–80C, slip op. at 2 (Ct.Cl. October 16, 1981); Gaskins v. U.S. Postal Service, 221 Ct.Cl. 918, 919–20 (1979).

**4.** Plaintiff was given a fitness-for-duty examination by a physician in 1976. The report of this examination, dated September 20, 1976, found plaintiff to be "fully fit to perform the duties of his position." Furthermore, it was recommended that plaintiff be supervised by someone with a strong personality and be told that "he is expected to behave like a man and that he will have no special privileges."

substantial evidence. *Wathen v. United States,* 208 Ct.Cl. 342, 351, 527 F.2d 1191, 1197 (1975), *cert. denied,* 429 U.S. 821 [97 S.Ct. 69, 50 L.Ed.2d 82] (1976). Good faith of those taking administrative action is presumed, and the plaintiff has a heavy burden to overcome this presumption. *Id.* Plaintiff has failed to meet this burden.

█ A fitness-for-duty examination of an employee and filing for disability retirement on behalf of an employee by an agency are tied to a determination of total disability. The agency must have *reason to believe* that the employee is "totally disabled for useful and efficient service in the ... position occupied (as shown by his performance or by a job-related factor) because of disease or injury not due to vicious habits, intemperance, or wilfull [sic] misconduct on his part within five years before becoming so disabled. . . ." 5 C.F.R. 831.-1203(c)(1) (1978). Total, not partial or moderate disability is necessary. *Cf. Fancher v. United States,* 218 Ct.Cl. 504, 511, 588 F.2d 803, 807 (1978). Additionally, where a psychiatric fitness-for-duty examination is being considered, "two or three agency officials ... must agree *in the light of all available facts of the case* that such an examination appears to be necessary." 5 C.F.R. 831.1203(a)(1) (1978) (emphasis added). Thus, the focus of the MSPB review is properly placed on what was known at the time of decision by the proposing and deciding officials responsible for plaintiff's removal and on the reasonableness of their actions in light of that knowledge. *See Brink v. United States Veterans Administration,* 4 MSPB 419, 421 (1980).

After his 1976 fitness-for-duty examination, plaintiff was found to be fully fit to perform the duties of his position. The officials involved in plaintiff's removal were aware of this finding. Plaintiff did not seek psychiatric assistance until after he had been repeatedly counseled, disciplined and ultimately notified of his proposed removal. The Wilkins letter contained no

diagnosis of mental illness, but only stated that plaintiff had sought treatment for a problem of chronic lateness to work after his receipt of the notice of proposed removal and that plaintiff was participating in weekly psychotherapy treatment.[5] Robert B. Turner, plaintiff's immediate supervisor, who initially proposed plaintiff's removal, was unaware that plaintiff had "visited a psychiatric social worker during the period between the notice of proposed removal and the final decision." Affidavit of Robert B. Turner at 1 (April 4, 1979), AR at 132, (Turner Affidavit). Ernest F. Kerekes, plaintiff's Division Director who signed the letter of proposed removal, first became aware of plaintiff's visit to the psychiatric social worker during the reply proceeding before J.B. Cherry. Affidavit of Ernest F. Kerekes at 1 (April 4, 1979) AR at 135, (Kerekes Affidavit). Cherry, who made the final recommendation of removal to Captain Allen D. Williams, then Commanding Officer at NARF, considered the Wilkins letter in making his recommendation. He concluded that "[t]he memorandum spoke only to a problem of chronic lateness; ... my recommendation was based on [plaintiff's] total record. While I considered the memorandum, I did not believe it represented a significant enough factor to reverse the recommendation for removal." Affidavit of J.B. Cherry at 1 (April 4, 1979) AR at 138, (Cherry Affidavit). Captain Williams, who signed the letter of decision effecting plaintiff's removal, also considered the Wilkins letter. He determined that as plaintiff had been found physically and mentally fit to perform his duties during the time used as a basis for his removal the letter was not significant. Affidavit of Allen D. Williams (April 11, 1979) AR at 142, (Williams Affidavit). All of the NARF officials involved in plaintiff's removal stated that their removal recommendations were based primarily on plaintiff's disciplinary record and that they had no reason to believe that any disability contributed to plaintiff's infractions. Turner, Cherry and Williams Affida-

---

**5.** Diagnosis of plaintiff's mental problems was first provided during the EEO investigation. This diagnosis was contained in the January 27,

1979 letter of psychiatrist Dr. Robert B. Thrasher.

vits. Instead, at least two officials reasonably believed that the infractions were due to willful misconduct by plaintiff. *See* 5 C.F.R. 831.1203(c)(1) (1978). Both Turner and Kerekes believed that plaintiff's disciplinary problems were due primarily to plaintiff's greater interest in his outside business than in his NARF position. "He had a business outside making crabpots, and he didn't seem to have the interest in his job at NARF. He apparently was not completely dependent on his job here and that may have been why he took things so lightly." Turner Affidavit at 1, AR at 132. "He was more interested in a business he had on the outside, and he let it be known around the shop he didn't need the job— that he was making more in his crabpot business. One of his disciplinary offenses involved his unauthorized use of government equipment to work on material involved in his crabpot business." Kerekes Affidavit at 1, AR at 135.

■ Thus, the proposing and deciding officials were on notice only that plaintiff was found fully fit to perform his duties and that plaintiff had an extensive counseling and disciplinary record. Based on the available facts, these officials had no notice or knowledge of any diagnosed mental illness of plaintiff and no reason to believe that plaintiff's infractions resulted from a mental disability.

■ Neither was plaintiff totally disabled. He was reported to be fully fit to perform his duties after the 1976 fitness-for-duty examination. Plaintiff did not seek psychiatric assistance until all NARF efforts at counseling and discipline had failed and the notice of proposed removal had issued. No diagnosis of plaintiff's claimed mental disability was made until January 27, 1979, one year after the notice of proposed removal. *See supra* n. 5. In a supplemental letter of January 8, 1980 Dr. Thrasher acknowledged that, in his opinion, plaintiff's condition "although present and obvious, was not to such an extreme degree that the average layman would think that 'anybody would know he is crazy and ought to be treated.'" Furthermore, as demon-

strated above, all officials involved in the removal had no reason to believe that plaintiff's misconduct was attributable to a disability. Additionally, despite his repeated infractions, plaintiff was apparently able to adequately perform his assigned tasks. He received a Zero Defects Award on November 29, 1977 for "accomplishing [his] assigned tasks with a high degree of quality craftsmanship. . . ." AR at 59. In its response denying reconsideration, the MSPB Office of Appeals Review stated that "the record would have shown that Mr. Peele's technical job performance was fully satisfactory, and the sole reason for his removal was his disciplinary record. . . ." MSPB No. NARF–01212/DC 12770/76/1a at 4 (February 26, 1980). Clearly, plaintiff was not totally disabled for useful and efficient service as demonstrated by job performance. 5 C.F.R. 831.1203(c)(1) (1978). In sum, the recommending and deciding officials acted in good faith and in compliance with applicable laws and regulations.

■ The MSPB affirmance of plaintiff's removal was supported by substantial evidence. Upon consideration of the record on appeal, plaintiff's disciplinary record, the facts of the case, and applicable regulations, the MSPB reasoned that "[t]he factual circumstances of the current offense, as well as those of the past record elements, do not reflect such aberrant or irrational behavior on appellant's part to require the agency to counsel appellant on disability retirement or file a disability retirement application on his behalf." MSPB Decision No. SL752B90101 at 7 (August 31, 1979). The MSPB thus found that "the agency was not put on sufficient notice of appellant's mental impairment or that his work-related shortcomings resulted from a mental illness such that the agency was required to counsel appellant on disability retirement or file a disability retirement application on his behalf." *Id.* at 9. As demonstrated above, the MSPB decision clearly was based on relevant evidence which a reasonable mind would accept as adequate to support its conclusion. *Consolidated Edison Co. v. N.L.*

*R.B.,* 305 U.S. 197, 229 [59 S.Ct. 206, 216–217, 83 L.Ed. 126] (1938).

 Finally, it was proper for the MSPB Office of Appeals Review to deny plaintiff's request to reopen and reconsider its decision. Under 5 C.F.R. 772.310(a)(1), (2) (1978), a decision may be reopened and reconsidered if "[n]ew and material evidence is available that was not readily available when the decision of the appeals officer was issued," or if "[t]he previous decision of the appeals officer involves an erroneous interpretation of law or regulation. . . ." *Gintel v. United States,* No. 158–80C, slip op. at 3 (Ct.Cl. October 16, 1981). As set forth above, the initial decision of the MSPB properly interpreted applicable laws and regulations. Furthermore, plaintiff did not present new and material evidence such as to merit reconsideration.

Plaintiff contends that the letter of January 8, 1980 by Dr. Thrasher and the records of disciplinary actions against other NARF employees constituted new and material evidence. As the MSPB found, Dr. Thrasher's letter of January 8, 1980 was not material because evidence of plaintiff's mental problem was not available to NARF when it made the removal decision. This letter also did not constitute new evidence because it simply repeated the opinion of Dr. Thrasher as to plaintiff's mental illness, which had been provided in the prior letter of January 27, 1979. Finally, all disciplinary actions against others in plaintiff's department taken during the year immediately prior to the action against plaintiff were considered by the EEO investigator. AR at 127–30. The chart listing these actions and the investigator's report were included within the administrative record reviewed by the MSPB St. Louis Field Office. MSPB Decision No. SL752B90101 at 8 (August 31, 1979). Thus, information on NARF disciplinary actions against other employees would not have constituted new evidence before the MSPB Office of Appeals Review.[6] In sum, plaintiff presented no proper grounds for a rehearing.

Because plaintiff's removal and the administrative review thereof were neither arbitrary nor capricious, were in accordance with applicable laws and regulations, and were supported by substantial evidence, this court holds for the defendant. Therefore, it is

ORDERED, the plaintiff's motion for summary judgment is denied, defendant's cross motion for summary judgment is granted, and the Petition will be dismissed.

---

6. It appears from the record that plaintiff provided no additional information on the issue of disciplinary practices of NARF.