Wayne LINDAHL, Petitioner,

v.

**OFFICE OF PERSONNEL MANAGE-MENT, Respondent.**

**Appeal No. 39–81.**

United States Court of Appeals,
Federal Circuit.

Sept. 22, 1983.

John Murcko, Oakland, Cal., argued for petitioner.

Robert A. Reutershan, Washington, D.C., argued for respondent. With him on the brief were J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Donnie Hoover and Judith E. Cohn, Washington, D.C.

MARKEY, Chief Judge.

Petitioner Lindahl appeals from a decision of the Merit Systems Protection Board (MSPB) affirming the denial by the Office of Personnel Management (OPM) of his request for a disability annuity. We order dismissal of the appeal for lack of jurisdiction.

### Background

On September 5, 1978, Lindahl elected to retire, on the basis of disability, from his civilian employment with the United States Navy. On September 25, 1979, the Navy notified him that he would be separated for physical disability. He accepted the disability separation but claimed an annuity. On March 21, 1980, OPM's denial of the annuity was affirmed in a comprehensive opinion, No. SF 831L8110492, in which MSPB pointed out that the degree of disability required for voluntary separation is less than that required for entitlement to an annuity, and that Lindahl was not disabled to the extent required for an annuity. Lindahl filed an appeal in the Court of Claims, on June 10, 1981, and the case was transferred to this court on 1 October 1982 in accord with the Federal Courts Improvement Act (FCIA), Pub.L. No. 97–164, 96 Stat. 25.

The government moved to dismiss, citing as alternate grounds: (1) judicial review is precluded by 5 U.S.C. § 8347(c); (2) jurisdiction is lacking under 5 U.S.C. § 7703 because Lindahl is not an "employee". Because we dismiss on (1), we need not and do not in this case determine the meaning or scope of the word "employee" in § 7703.

### Opinion

### Judicial Review is Precluded by 5 U.S.C. § 8347(c)

■ Congress established a retirement system for federal employees. 5 U.S.C. § 8337. The right to retirement per se, or to a retirement annuity is not founded in the Constitution. The rights created having their genesis in a statute, Congress was at liberty, *Dismuke v. United States*, 297 U.S. 167, 172, 56 S.Ct. 400, 403, 80 L.Ed. 561 (1936), to establish a statutory scheme in which the decisions governing eligibility for disability retirement and annuities would be made entirely within the administrative process. Congress was further at liberty to amend that scheme to provide a review step within the administrative process, and to provide for judicial review of one type of such decisions.

Congress did precisely that, the amended statutory scheme being set forth in the current statute at 5 U.S.C. § 8347(c) and (d):

(c) The Office [OPM] shall determine questions of disability and dependency arising under this subchapter. *Except to*

*the extent provided under subsection (d) of this section,* the decisions of the Office concerning these matters are final and conclusive and are not subject to review. The Office may direct at any time such medical or other examinations as it considers necessary to determine the facts concerning disability or dependency of an individual receiving or applying for annuity under this subchapter. The Office may suspend or deny annuity for failure to submit to examination.

*(d)(1) Subject to paragraph (2) of this subsection,* an administrative action or order affecting the rights or interests of an individual or of the United States under this subchapter may be appealed to the Merit Systems Protection Board under procedures prescribed by the Board.

*(2) In the case of any individual found by the Office to be disabled in whole or in part on the basis of the individual's mental condition, and that finding was made pursuant to an application by an agency for purposes of disability retirement under section 8337(d) of this title, the procedures under section 7701 of this title shall apply and the decision of the Board shall be subject to judicial review under section 7703 of this title.*

The emphasized matter is that added in 1980 by Pub.L. No. 96–500, 94 Stat. 2696.

The parties' briefs and arguments do not note that the OPM decision in this case was rendered before the January 1, 1981 effective date of the 1980 amendment. When the OPM decision was rendered, sections 8347(c) and (d) were as above quoted, but without the emphasized matter. We are required, absent manifest injustice, to apply the law as it exists at the time of our decision. *Bell v. New Jersey and Pennsylvania,* —— U.S. ——, 103 S.Ct. 2187, 2199, 76 L.Ed.2d 313 (1983) (White, J., concurring). In the present case, no such manifest injustice would result, which may account for the parties' discussion of the statute as it was amended in 1980.

We decide here only the question of our jurisdiction to hear the type of appeal before us, i.e., an appeal from an MSPB decision affirming the denial of a claim for annuity following a voluntary physical disability retirement, a decision reached by MSPB under the authority provided it in § 8347(d)(1). In such cases, the initial decision is that of the employee who has elected to retire, and who has asserted disability as the reason, and who has then sought an annuity.

Lindahl here seeks judicial review of MSPB's decision on the "question" of his disability as entitling him to an annuity. The so-called "finality clause" in §·8347(c) states unequivocally and unambiguously that administrative decisions on questions of disability "are final and conclusive and are not subject to review". It is difficult to conceive of a more clear-cut statement of congressional intent to preclude review than one in which the concept of finality is thrice repeated in a single sentence.

The finality clause first appeared, in relation to survivorship benefits, in 5 U.S.C. § 724, in 1948. No legislative history existed in relation to that section, and none is needed in view of its continued unambiguous nature. In 1956, as codified at 5 U.S.C. § 2266(c), the preclusion of review was extended to include disability cases.

Subsequent legislative enactments and court decisions dealing with federal employee retirement, as well as those dealing with other rights of federal employees, have resulted in substantial confusion respecting the limited question before us.

Respecting retirement, Congress passed in 1978 an amendment to § 8347, Pub.L. No. 95–454, 92 Stat. 1111, providing for review by MSPB of OPM disability decisions. § 8347(d). By that amendment, Congress continued to limit the enforcement of voluntary disability retirement rights to the administrative process. It nonetheless provided, to an individual dissatisfied with an OPM decision, an appeal to a quasi-judicial tribunal independent of OPM and affording appropriate administrative review procedures.

In the 1978 amendment Congress let stand the provision in § 8347(b) that OPM

"shall adjudicate all claims under this chapter". Congress did not specifically spell out in the statute that § 8347(d) was an exception to the finality clause in § 8347(c).

The history of what Congress did, up to and including its adoption of the 1980 amendment indicates its present intent to deny judicial review of MSPB decisions on questions of disability, other than those involved when an agency forces retirement for mental disability. By the language it selected in constructing § 8347, Congress began with a total limitation to the administrative process, stopping the process with the decision by the Civil Service Commission (now OPM). In 1978, Congress provided for review of OPM decisions, still within the administrative process, by MSPB. In reenacting § 8347(c) without change, Congress thus provided that the review process of § 8347(d) ended at the MSPB level. Until 1980, Congress had at no time specifically granted jurisdiction to any court to review any decision, by either OPM or MSPB, on questions of disability and dependency. Then, in 1980, for the first time, Congress provided for judicial review, but only to individuals forced to retire at the instance of an agency on the basis of the individual's alleged mental condition. In that 1980 amendment, Congress clarified the relationship between § 8347(c) and (d) by inserting in the former "Except to the extent provided under subsection (d)".

█ Thus, the plain language of the statute, with which we must begin, *Southeastern Community College v. Davis*, 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979), expressly precludes review beyond the administrative process, i.e., it precludes judicial review, of denials of voluntary disability retirement annuity claims such as Lindahl's. An express statutory provision that certain decisions of an administrative agency "are final and conclusive and are not subject to review" should not be interpreted as though it said such decisions "are *not* final and are *not* conclusive and *are* subject to *some judicial* review". Certainly that interpretation should not be adopted after Congress has in the same statute provided that *other* decisions are subject to review. To so read the review-precluding language of the present statute would appear not a judicial act of interpretation but a legislative act of repeal.

Whatever may be said of the finality clause in the abstract, the subsequent actions of the Congress providing specific and particular exceptions to that clause, one administrative, the other judicial, provide compelling evidence of its intent to preclude judicial review of MSPB decisions on voluntary disability retirement claims. Congress having provided for administrative review in § 8347(d)(1), the express exclusion of review in § 8347(c) can relate only to judicial review.

█ Where, as here, Congress has repeatedly revisited the statute, and where, as here, those self-reviews of its earlier handiwork included two in which it has spelled out specific exceptions to its total preclusion of review, and the specific forums for each, it is not within the province of a court to create additional exceptions. Congress has addressed the question of exceptions, has in the 1980 amendment created legislation without ambiguity or inconsistency, has assured uniformity in the retirement law by making certain discrete disability claims decidable exclusively by MSPB and others exclusively reviewable in this court, has dealt with all classes of disability annuity claimants, and has provided specific means through which each class may pursue claims for annuity. No basis exists on which this court could exercise an assumed power to create some new class of annuity claimants or to design some new procedure that would include a right of such claimants to appeal to this court.

Lindahl is not within the class of claimants to which the right to judicial review of MSPB disability decisions is provided by § 8347(d)(2). He cites no constitutional infirmity in the legislation governing disability retirement or in the classifications made in that legislation.

■ This court's grant of jurisdiction to review MSPB decisions is broad but not unlimited. Among the limitations on that grant is necessarily a statute expressly excluding review of certain decisions. Such a statute is spelled out in 5 U.S.C. § 8347(c) and (d). The government's motion to dismiss must therefore be granted.[1]

*Asserted Bases For Jurisdiction*

■ As above indicated, legislation creating rights of federal employees, and the legislative history of that legislation, have clouded the search for clarity that is an integral part of the judicial process. Equally well intentioned and careful courts have reached differing conclusions respecting what the intent of Congress was when it enacted and amended § 8347. Intent of Congress being the touchstone in cases of statutory interpretation, we have been cited to a number of bases upon which it might be held that Congress intended this court to exercise a jurisdiction to review MSPB decisions on voluntary disability retirement annuity claims.

(a) *The Scroggins Line of Cases*

In *Scroggins v. United States*, 397 F.2d 295, 297, 184 Ct.Cl. 530, —— cert. denied, 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968), it was said that the finality clause of § 8347(c) meant that "at best, a court can set aside the Commissioner's determination only 'when there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination'".

Though the "procedural departure, legislation misconstruction, or like error" quotation was from *Gaines v. United States*, 158 Ct.Cl. 497, 502, cert. denied 371 U.S. 936, 83 S.Ct. 309, 9 L.Ed.2d 271 (1962), it has been labeled the "Scroggins formula", and referred to in: *Polos v. United States*, 621 F.2d 385, 391–92, 223 Ct.Cl. 547, 559–60 (1980); *Fancher v. United States*, 588 F.2d 803, 806, 218 Ct.Cl. 504, 509–10 (1978); *Allen v. United States*, 571 F.2d 14, 17, 215 Ct.Cl. 524, 529–30 (1978); *McFarland v. United States*, 517 F.2d 938, 942–43, 207 Ct.Cl. 38, 45–48 (1975), cert. denied, 423 U.S. 1049, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976); *McGlasson v. United States*, 397 F.2d 303, 307, 184 Ct.Cl. 542, —— (1968).

The "Scroggins formula", though quoted from *Gaines* in *Scroggins*, had its genesis in *Smith v. Dulles*, 236 F.2d 739, 742 (D.C.Cir. 1956), cert. denied, 352 U.S. 955, 77 S.Ct. 329, 1 L.Ed.2d 244 (1956). *Smith* was one of three cases decided on the same day and denying reinstatement, back pay, and declaratory judgments. A footnote in *Smith* traces the "formula" back to *Powell v. Brannan*, 196 F.2d 871, 873 (D.C.Cir.1952), a reduction-in-force case having no relation whatever to retirement. (*See* reference to "decisional leapfrogging" in Griswold, *The Judicial Process*, 28 Rec.A.B. City N.Y. 14, 24–25 (1973)).

*Smith, Gaines, Scroggins, McGlasson,* and *McFarland* dealt with forced retirements for mental conditions. *Fancher, Allen,* and *Polos* dealt with forced retirement for physical disability. No case dealt with a voluntary retirement claim for annuity, and in no case (except in *Allen,* overruled in *Polos*) did application of the "Scroggins formula" result in reversal.

We face here no settled case law. Sections 8347(c) and (d), and the "Scroggins formula" have appeared in the opinions of other courts with varying results, some rejecting it, *see: Campbell v. OPM*, 694 F.2d 305 (3d Cir.1982); *Chase v. OPM*, 695 F.2d 790 (4th Cir.1982); *Morgan v. OPM*, 675 F.2d 196 (8th Cir.1982), some applying it, *Parodi v. MSPB*, 690 F.2d 731 (9th Cir. 1982); *McCard v. MSPB*, 702 F.2d 978 (11th Cir.1983); *Turner v. OPM*, 707 F.2d 1499 (D.C.Cir.1983); *Pitzak v. OPM*, 710 F.2d

---

1. Lindahl suggests that 28 U.S.C. § 1491 may supply jurisdiction in the Claims Court to determine the question of whether his disability entitles him to an annuity following his voluntary disability retirement, the claim having been denied by OPM and by MSPB after review under § 8347(d)(1). Jurisdiction of the Claims Court being a matter for its decision in the first instance, we need not and do not here respond to Lindahl's suggestion.

1476 (10th Cir.1983), and one accepting it with a limitation, *Lancellotti v. OPM,* 704 F.2d 91 (3d Cir.1983). Our independent consideration has led us to what is in our view the sounder conclusion.

If the cases of our predecessor court referring to the "Scroggins formula" were interpreted as holding that § 8347(c) and (d) leave room for judicial review of voluntary disability retirement annuity claims, those cases to that extent would have to be viewed as wrongly decided and overruled.

The concern that apparently led to the initial application of the "Scroggins formula" by our predecessor court, i.e., that administrators might unfairly force individuals from federal employment with an attached mental condition "stigma", has been fully met by Congress' enactment of § 8347(d)(2). The cases dealing with that form of retirement are therefore simply no longer viable.

Because all references to the "Scroggins formula" by our predecessor court appear in opinions of that court dealing with forced retirement, the *Scroggins* line of cases cannot serve as a basis for an assertion of jurisdiction to review an MSPB decision on voluntary retirement like that presented here.

### (b) *Review of Agency Action*

Treatment of 5 U.S.C. § 8347(c) in the courts since 1956 seems to have been influenced by an apparent tendency to resolve doubt in favor of assuring federal court review of every conceivable objection to agency action. The tendency has on occasion served well the paramount public interest in the administration of justice, and has avoided a slamming of the federal courthouse door in the face of persons entitled to be there. Courts should be equally zealous in avoiding the unauthorized jamming of the courthouse door. Persons entitled to be there are harmed when denied or delayed entry by a crowd which is there not because a constitutional right is involved, or because a statute provides a right to be there, but only because a court had adopted an overly expansive view of its own jurisdiction.

■ In the present case, for example, it is nowhere asserted that Congress has ever specifically *granted* jurisdiction to any court to hear appeals from administrative decisions on claims for annuity by those who voluntarily retire. Whatever may be their "traditional powers", all federal courts are courts of limited jurisdiction. It is not within the powers, traditional or otherwise, of federal courts to fill every seeming jurisdictional void they may detect in congressional legislation; but if it were, there is no void detectable in § 8347(c) and (d).[2]

The Administrative Procedure Act provides for judicial review of agency action, 5 U.S.C. § 704, but specifies that judicial review is *not* available when precluded by statute, 5 U.S.C. § 701(a). In *Dismuke,* 297 U.S. at 172, 56 S.Ct. at 403, in *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140–41, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967), and in *Barlow v. Collins,* 397 U.S. 159, 166–67, 90 S.Ct. 832, 837–38, 25 L.Ed.2d 192 (1970) (quoting *Abbott*), the Supreme Court has erected a presumption of judicial review over agency action. It has, however, been careful in those cases to recognize the right of Congress, within constitutional boundaries, to rely on the administra-

---

**2.** The powers of federal courts have been the subject of controversy since long before those courts were born. There was deep distrust of a federal judicial system in the Constitutional Convention. See Farrand, *The Records of the Federal Convention,* (Rev.Ed.1937); Prescott, *Drafting the Federal Constitution,* ch. 17 (1941). There was concern that the federal judiciary would find it had jurisdiction to achieve broad purposes of federal statutes. See 3 Elliott, *Debates,* 565. Early on, the Supreme Court held that inferior federal courts received no powers directly from the Constitu-

tion, but only such authority as may be vested in them by Congress, *Turner v. Bank of North-America,* 4 U.S. (4 Dall. 7), 1 L.Ed. 717 (1799); *McIntire v. Wood,* 11 U.S. (7 Cranch 503), 3 L.Ed. 420 (1813); *Kendall v. United States,* 37 U.S. (12 Pet. 524), 9 L.Ed. 1181 (1838); *Cary v. Curtis,* 44 U.S. (3 How. 236), 11 L.Ed. 576 (1845), and that for jurisdiction to exist the Constitution must have given the capacity to take it and an act of Congress must have supplied it. *The Mayor v. Cooper,* 73 U.S. (6 Wall. 247), 18 L.Ed. 851 (1867).

tive process and to preclude judicial review. As above indicated, we hold § 8347(c) an express preclusion of judicial review. Hence the presumption outlined in *Abbott* is inapplicable, and our holding here does not impinge upon or conflict with that presumption.

It is suggested that this court might reconcile the presumption of reviewability with the finality clause of § 8347(c) by noting the inclusion of OPM's fact finding role in that section, and by saying that Congress intended to preclude only a review of OPM's factual determinations. Then, we are asked to say, a claimant for a voluntary disability retirement annuity would retain a "right" to judicial review for a possible procedural or legal error by OPM or MSPB. We decline the suggestion. The question before us is not whether this or that type or breadth of judicial review would be in our lights advisable or appropriate. The question is whether any is authorized.

However attractive may have been the temptation to reconcile the reviewability presumption with § 8347(c) and (d) as they stood before the 1980 amendment, no such reconciliation is now possible. The current statute provides that OPM shall determine "questions" of disability and that its "decisions" concerning such matters are reviewable under § 8347(d)(1) only by MSPB. Thus Congress has provided, not precluded, review of OPM's factual determinations. It lodged that function, however, in MSPB. The statute further provides in § 8347(d)(2) for judicial review of particular MSPB decisions, under a particular standard of review found in § 7703. Congress having so divided and allocated the review function between the executive and judicial branches, the courts are not at liberty to reallocate it.

■ Moreover, the factual determination that a voluntary claimant is not disabled can be expected to control the outcome, as illustrated by the virtually universal denial of relief, even in forced retirement cases, under the judicially crafted "Scroggins" type of review. Nor, the factual determinations being non-reviewable, is relief likely on legal or procedural

grounds. As above indicated, one whose application for an annuity is denied after voluntary disability retirement is not by that denial alone deprived of a constitutional right. There being no liberty or fundamental pre-existing property interest at risk, the simplest procedures adopted by the agency will avoid a claim of denial of procedural due process.

■ It is, of course, possible to posit a scenario in which OPM and MSPB might both act so irresponsibly and arbitrarily as to employ unacceptable interpretations of law, statutes, or regulations, and totally inadequate procedures, for the purpose of denying annuities to those who voluntarily retire. Conjecture cannot alone, however, serve as a grant of jurisdiction. A facile formula based on a fear of faceless functionaries would be such a grant, for the court would have to exercise jurisdiction to determine whether legal or procedural error had occurred. Allegations of procedural error are easily made, as were the assertions here of failure to follow procedures inapplicable to Lindahl.

Whether the supposed scenario is realistic, and whether it be of a nature and breadth to warrant judicial review of all MSPB decisions on all voluntary retirement claims, would be a matter for investigation and legislation (if deemed appropriate) by the Congress, not the courts.

### (c) *5 U.S.C. § 7703 and 28 U.S.C. § 1295*

Lindahl cites the broad provisions for review by this court of what he describes as "any" MSPB decision, and the grant of "exclusive" jurisdiction to this court over appeals from what he calls "all" MSPB decisions in 28 U.S.C. § 1295(a)(9). It is implied that a "conflict" or "anomaly" would somehow arise if, in the light of § 7703, it were held that §§ 8347(c) and (d) expressly preclude judicial review of voluntary disability retirement claims. We find no basis for that view.

■ First, retirement benefit claims are not adverse action claims. *Fancher v. United States, supra,* 588 F.2d at 807, 218 Ct.Cl.

at 511; *Piccone v. United States,* 407 F.2d 866, 872, 186 Ct.Cl. 752, 762–64 (1969). No voluntary disability claims have been reviewed under § 7703. Respecting involuntary claims, it was the *Scroggins* line of cases, not § 7703, which was looked to as a basis for jurisdiction.

▮ Second, there is no "conflict" or "anomaly" created when Congress provides different routes and different forums for enforcement of different statutory rights. Indeed, Congress provided a divergent route in § 7703(b)(2) for a claim that an adverse action was based on discrimination. Thus an anomaly is avoided, not created, when the court honors the express exception to its § 7703 jurisdiction appearing in § 7703(b)(2) and simultaneously honors the express exception to its § 7703 jurisdiction appearing in §§ 8347(c) and (d).

Third, there are numerous differences between an appeal from OPM's denial of a claim for annuity on voluntary retirement that may be brought to MSPB under § 8347(d)(1), and appeals that may be brought to this court under § 7703. The former may be brought by "individuals"; involve "procedures prescribed" by MSPB; and place the burden on the applicant, *Chavez v. OPM,* 6 MSPB 343, 353 (1981). Those differences warrant, if warrant were needed, a difference in congressional treatment.

▮ Fourth, a specific statute dealing with disability claims prevails over a general statute dealing with appeals generally from decisions of the MSPB. *HCSC-Laundry v. U.S.,* 450 U.S. 1, 6, 101 S.Ct. 836, 838, 67 L.Ed.2d 1 (1981).

▮ Decisions of MSPB that can be challenged by a *de novo* trial in the district court (i.e., those resolving discrimination claims), and OPM decisions that Congress has specifically said are not reviewable except by MSPB (§§ 8347(c) and (d)(1)) are clearly not encompassed within the words "any" and "all" that were used by some congressmen in discussing the jurisdiction provisions in the FCIA. S.Rep. No. 95–969, 95th Cong., 2d Sess. 62, *reprinted in* 1978 U.S.Code Cong. & Ad.News 2723, 2784. It

will not do to argue that references by some congressmen to review of "all" MSPB decisions by this court resulted in a repeal, *sub-silentio,* of §§ 7703(b)(2) and 8347(c). Repeal of a statute should never be assumed. *Allen v. McCurry,* 449 U.S. 90, 99, 101 S.Ct. 411, 417, 66 L.Ed.2d 308 (1980).

Quite apart from the presence of §§ 7703(b)(2) and 8347(c) and (d), it is not true that Congress made "all" MSPB decisions appealable to this court. In 28 U.S.C. § 1295(a)(9), Congress provided this court with a jurisdiction over MSPB decisions different from that previously provided the Court of Claims and the regional Circuit Courts of Appeals. As discussed in *Lancellotti v. OPM, supra,* 704 F.2d at 97–99, those courts had been stated to have jurisdiction over "*all final orders* of the Merit Systems Protection Board" except those in § 7702(b)(2) cases. 28 U.S.C. § 2342(6) (Supp. IV 1980). In contrast, the FCIA makes the jurisdiction of this court applicable to appeals "pursuant to sections 7703(b)(1) and 7703(d) of title 5". Appeals of MSPB decisions under 5 U.S.C. § 1207 are directed to the regional circuits, not to this court. There is no appeal, even to the MSPB, under 5 U.S.C. § 3592.

As complicated and complex as the Civil Service Reform Act is, it is at least clear, when §§ 7703(b)(1) and 7703(d) are read in context, that among the final orders and decisions of the MSPB appealable to this court are those under § 7703(a)(1). Section 7703(a)(1), as applicable to this court, encompasses MSPB original jurisdiction cases and appeals properly brought to the MSPB under § 7701. Section 7701 itself encompasses agency decisions either specifically designated by the statute as appealable to MSPB under § 7701, e.g., 5 U.S.C. §§ 3593(c)(2); 3595(c); 7543(d); and 8347(d)(2); or those so designated by "rule or regulation".

The provision governing MSPB's jurisdiction, 5 U.S.C. § 7701, raises no conflict with our adherence to the statutory preclusion of judicial review present in §§ 8347(c) and (d). In connection with appeals to MSPB like Lindahl's, MSPB has by regulation

elected to employ § 7701 procedures. *See* 5 CFR § 1201.3(a)(6). The question of whether MSPB correctly employs § 7701 procedures in exercising its review authority of particular agency decisions under § 8347(d)(1), however, is not before us. An MSPB election to treat its review authority under § 8347(d)(1) as permitting use of § 7701 procedures cannot constitute a grant of jurisdiction to this court to review all decisions MSPB reaches under § 8347(d)(1). *Schwartz v. Department of Transportation*, 714 F.2d 1581 (Fed.Cir.1983). Nor can that election work a repeal of § 8347(c). Nor is there reason to suppose that MSPB authority to render decisions and this court's jurisdiction to review MSPB decisions must be identical or coextensive.

To hold that judicial review of all § 8347(d)(1) decisions had all along been available under § 7703, would be to render superfluous Congress' action in § 8347(d)(2), making judicial review available for particular claims under § 7703.

We need not, and hence do not, decide in this case whether all decisions of MSPB under § 8347(d)(1) are denied judicial review by § 8347(c). If § 8347(c) is to have any meaning, there must be some decisions of OPM that are final and conclusive and not reviewable except by MSPB under § 8347(d)(1). It is enough to hold, as we do, that § 7703 does not make MSPB decisions on voluntary disability retirement claims appealable, either by claimants or by OPM, to this court.

(d) *The 1980 Amendment*

It is suggested that Congress knew of *Scroggins* at the time of the 1980 amendment, and that it effectively ratified judicial review under the limited "Scroggins formula", because it did not specifically say it was not doing so. We are cited to statements of congressmen mentioning *Scroggins*, H.R.Rep. No. 96–1080, 96th Cong., 2d Sess. 3 (1980), and to contrary statements of other congressmen who thought that all judicial review was precluded by § 8347(c). S.Rep. No. 96–1004, 96th Cong., 2d Sess. 2, *reprinted in* 1980 U.S.Code Cong. & Ad.

News 5986, 5987; H.R.Rep. No. 96–1080, *supra*, at 4. Though OPM's director could not express the intent of Congress, we are cited to a letter from him in which he acknowledged existence of the review referred to in *Scroggins*. H.R.Rep. No. 96–1080, *supra*, at 8–10. The legislative history contains no statement of the "formula", no recognition that the "formula" had been mentioned in forced retirement cases, and no express acknowledgement that the "formula" had resulted in virtually no reversals of the decisions reached in the administrative process.

We find no support for the view that the 1980 amendment merely expanded the "breadth" of review, in cases of forced retirement on mental condition, beyond the "limited" review said to be available for such cases in *Scroggins*. If that were true, it would, as above indicated, merely remove the viability of *Scroggins*. It would not establish that a judicially created and judicially limited review had existed for other types of cases, such as the voluntary retirement type presented here. What did not properly exist cannot be expanded.

It is one thing to say on a particular record that Congress had incorporated the judicial "gloss" placed on a statute. It is another to say that a court's departure from an express preclusion of review is adopted unless Congress in reenacting the preclusion verbatim specifically adds "we meant what we said the first time". Whether a court may require Congress to specifically disallow review the court had "allowed" is not here a relevant consideration. In § 8347(d)(2) Congress not only allowed but legitimized judicial review in the type of case in which our predecessor court had said it was appropriate, while simultaneously reenacting the express review preclusion in § 8347(c) and making plain that §§ 8347(d)(1) and (d)(2) were exceptions to that preclusion.

That some congressmen and the director of OPM referred to the existence of a court-designed review formula, or that some congressmen said the law was not being changed, or that some criticized

*Scroggins,* or that some said § 8347(c) barred all judicial review, cannot be controlling. We look not to conflicting comments of a few congressmen, but to what Congress did. What it did in 1980, as above indicated, was to add an *exception* to its prohibition of review in disability cases, and allowed judicial review when the government orders retirement for mental disability. What it did was to leave § 8347(c) and its finality clause untouched. The "law" that Congress did not change in 1980 was the law Congress enacted in § 8347(c) and never repealed.

## CONCLUSION

A Congress frequently criticized for vastly increasing the jurisdiction of the federal courts, with insufficient concern for the impact of its legislation on those institutions, has enacted an employee retirement scheme which relies on the administrative process, and in 5 U.S.C. § 8347(c) and (d)(1) excludes the courts from review of administrative decisions in at least those cases involving voluntary claims for disability annuities. That effective congressional solicitude for crowded court dockets, and for the effect of that crowding on deserving litigants, deprives no one of any constitutional or statutory right.

The statute, 5 U.S.C. § 8347(c) and (d), is clear and unambiguous. Whether the finality clause of § 8347(c) should have been from the outset honored by judicial recognition that jurisdiction was lacking is academic. Today this court applies to the case before it the statute as written.

## ORDER

It is ordered that respondent's motion to dismiss for lack of jurisdiction be and it is hereby granted.

DISMISSED.

NICHOLS, Circuit Judge, concurring.

I agree with the judgment and join in it. Chief Judge Markey's able opinion I join in except where it is inconsistent with what follows.

First, I believe it is ill-advised to limit our holding to applicants for disability annuity who have themselves voluntarily retired from active employment because of disability. (a) The statutory preclusion of judicial review, relied on by the court, 5 U.S.C. § 8347(c), itself draws no such distinction, except in the category, not here involved, of involuntary retirement for mental disability. For this court to draw one belies our own conclusion that preclusion statutes mean what they say. (b) The distinction we draw will have unfortunate consequences in that persons of marginal disability will hang in and insist on involuntary retirement so as to safeguard their annuity rights, to the detriment of the federal service, and (c) the factual basis of the statement that Mr. Lindahl is a voluntary retiree is uncertain. It is clear he did not want to be retired except on the condition that he receive the annuity. That is why we have this lawsuit. If he put in an application for retirement that failed to make clear the precondition he had in mind, that may be dispositive of the present case, but only because nobody focused on the voluntary nature of the retirement, as an issue, and nobody took the trouble to clarify the record. Who said what to whom on what date is quite obscure. Nor is it clear whether Mr. Lindahl was adequately warned that by applying as he did, he sacrificed his active duty pay without obtaining assurance as to disability annuity. I would prefer to assume in favor of Mr. Lindahl that the retirement was involuntary except insofar as he agreed with management that he was in fact disabled, and differentiate the case to that extent only from those in which the much discussed "Scroggins formula" was invented and applied.

The chickens will come home to roost in a whole series of cases in which it will be alleged that the "Scroggins formula" survives and has an area for application, despite the *Lindahl* decision, because the disability retirement was *de jure* involuntary, or actually involuntary in view of the course of discussion of the applicant's physi-

cal problems, between him and management.

Second, having noticed and acknowledged that decisions of other circuits are in conflict as to whether the "Scroggins formula" undercuts the finality or preclusion language of § 8347(c), the court moves along without stating why the decisions applying the preclusion are preferred over those applying the formula. Though we are now to be, under the Supreme Court, the paramount authority to decide the issue under the Federal Courts Improvement Act of 1982, and none of these decisions bind us, they were rendered by courts having jurisdiction at the time, courts of last recourse as of right. None of the decisions, probably were products of such agonizing introspection as ours will be. None were rendered in banc. It is usual, however, for courts, federal and other, raised under our common law traditions, to regard decisions by other courts of equal authority as part of the problem to be dealt with, to be followed or explained away. I do not think the fact they are in conflict with each other is the only thing about them one need notice. There is a somewhat wooden quality about most of them. Those adhering to the formula adhere also to the often expressed judicial horror of leaving any executive branch decision immune to judicial review, without notice of the fact that this horror is much mitigated when it is a question of a money claim against the United States, as an annuity claim is, even apart from statutory preclusions. *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Those adhering to the preclusion likewise fail to notice how far the horror has often carried other courts, despite other express and implied statutory preclusions. The proper technique of weighing this horror against a statutory preclusion is a subject nobody seems willing to discuss, and perhaps wisely. I come out with the unsurprising conclusion that the decisions I agree with as to result are better considered, and I have at least one articulable reason for this which I will state *infra.*

A third and more serious objection I have to our generally able decision, is that it too ignores the striking contrast the "Scroggins formula" presents to the techniques of our highest court, and other courts, in dealing with "finality language" in other statutory contexts, and alleged to bar or curtail the judicial review that would otherwise occur.

The World War II Renegotiation Acts, 50 U.S.C. App. § 1191 and ff, both contained, originally or as amended, provisions (subsection (e) of § 1191) that a party aggrieved by an order to eliminate excessive profits could file a petition with the Tax Court:

Upon such filing such court shall have exclusive jurisdiction, by order, to finally determine the amount, if any, of such excessive profits * * * and such determination shall not be reviewed or redetermined by any court or agency.

In *Lichter v. United States,* 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (1947), the Supreme Court, though viewing the Tax Court as an administrative agency, upheld the constitutionality of these arrangements as a war measure under the constitutional war power. In *United States v. California Eastern Line, Inc.,* 348 U.S. 351, 75 S.Ct. 419, 99 L.Ed. 383 (1955), the Court gave the finality language a literal interpretation, holding it did not extend to questions as to what contracts were renegotiable, even though this necessarily underlay the issue of "amount."

The Renegotiation Act of March 23, 1951, 50 U.S.C. App. § 1211 and ff, set up a scheme that was similar so far as concerned the role of the Tax Court, and in § 1218 had a similar finality clause. That Act was extended several times regardless of whether the *Lichter* grounds existed, *i.e.,* a state of all-out or total war. The circuits that considered the question refused to hold that any exception existed to the finality language, except review on "constitutional or jurisdictional grounds." *Consolidated-Hammer Dry Plate & Film Co. v. Renegotiation Board,* 375 F.2d 591 (7th Cir.1967); *Boeing Company v. Renegotiation Board,* 325 F.2d 885 (9th Cir.), *cert. denied,* 377 U.S. 923, 84 S.Ct. 1220, 12 L.Ed.2d 215 (1963). The rule then was that "amount"

determinations, whether they related to fact or law, were reviewable only on "constitutional or jurisdictional" grounds. Whatever that was held not an "amount" determination was reviewable the same as any Tax Court decision by a court of appeals, when it concerned a federal tax. The Seventh Circuit, in its case, considered whether some "amount" holdings were "so arbitrary and capricious as to raise a constitutional issue" and stated they were not, but also said that its review of them was gratuitous. (375 F.2d at 594.)

All this is ancient history as the last extension of the Renegotiation Act has long since expired, but it does throw some light on the technique of applying finality clauses.

Article 76 of the Uniform Code of Military Justice, 10 U.S.C. § 876, provides that court-martial sentences, after proper review by military tribunals are "final and conclusive" and "all action taken pursuant to those proceedings [is] binding upon all * * courts * * * of the United States * * *." In *Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), it is held that this did not necessarily bar an Article III court from intervening by way of habeas corpus, injunction, or back pay suit in case of an unconstitutional or otherwise void court-martial. *United States v. Augenblick,* 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969) previously had reversed two decisions of the former Court of Claims that had sustained collateral attacks on court-martials by way of back pay suits, but paid insufficient respect to the finality language. It seems fair to say the distinguished record of the Court of Claims may have displayed such insufficient respect, not alone in enunciating the "Scroggins formula."

*United States v. Wunderlich,* 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113 (1951) reports an earlier losing encounter by the former Court of Claims with finality language. In that case the issue was the respect to be given to language then standard in government contracts, making decisions of contracting officers final in all cases of dis-

putes with contractors, whether on issues of fact or of law. The Court of Claims by long and generally accepted practice had read into this language an implied exception for decisions "so grossly erroneous as to imply bad faith," *e.g., Levering & Garrigues Co. v. United States,* 71 Ct.Cl. 739 (1931). The Supreme Court, in a decision that caused many tremors, held that the only permissible exception was actual fraud. Congress, by statute, reinstated the previous rule. 41 U.S.C. § 321, 322. See history of this issue in *Hoel-Steffen Construction Co. v. United States,* 684 F.2d 843 (Ct.Cl.1982) in which it is pointed out that there is necessarily a great difference between contract and statutory finality of decision, the former not affecting the waiver of sovereign immunity and consent to be sued as the latter often does.

Allowance of disability annuities to war veterans is a case decidedly parallel to the civilian annuities we have to deal with here.

The finality language in 38 U.S.C. § 211 bars judicial review of Veteran Administration decisions concerning veterans' benefits. It is not the same as § 8347(c) inasmuch as it is not limited to issues of disability and dependency and court review is expressly referred to. For whatever the point is worth, it may be noted that the Court of Claims never even in dictum pronounced any "Scroggins formula" type of exception to finality and the complete exclusion of the court from the area is rather assumed than asserted. Cases are, *e.g., Martin v. United States,* 197 Ct.Cl. 1062 (1972); *Jennings v. United States,* 566 F.2d 1189, 214 Ct.Cl. 789 (1977); *Jump v. United States,* 164 Ct.Cl. 453 (1964). In *Mitchell v. United States,* 664 F.2d 265 (Ct.Cl.1981), *aff'd,* —— U.S. ——, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983), the Court of Claims appears to recognize in dictum at 268 that this finality language provides "against any judicial scrutiny at all."

The Supreme Court in *Johnson v. Robinson,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), held that § 211 did not bar judicial consideration as to the constitutional validity of provisions of the laws provid-

ing veterans' benefits, a conclusion based on the bare language of § 211 as well as its purposes as shown by legislative history. The decision is not therefore a matter of reading unstated exceptions into the finality language itself. Justice Brennan's care in framing the majority opinion so as not to do this is noteworthy.

The Supreme Court handed down in *United States v. Erika, Inc.,* 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982) a decision which has a powerful impact upon the matter at hand. It deals with Medicare reimbursement to health care providers. These are in two kinds, Medicare A and B. Medicare A is primarily for hospital care and hospitals are paid by the government through an intermediary. Medicare B is optional for beneficiaries, is primarily for doctors' fees and other nonhospital health care expenses. Annuitants who elect the coverage pay a small amount which entitles them to be reimbursed by the government for payments which they make direct to the providers, or they may assign their claims to providers who collect from the government as assignees. Judicial review in the district courts only under Medicare A is expressly allowed, in cases of dispute as to the compensation allowable to providers. Distinctions are made as to the extent of *administrative review* as to issues of eligibility, and quantum under B. Congress is shown by the legislative history to have omitted Medicare B claims from judicial review because it expected most of them to be too small to take the time of the courts, overlooking that a concern such as *Erika* might be assignee of hundreds of claims and thus have large sums at stake. If Congress had said nothing about review, *Erika* and all other providers could have sued in the Court of Claims under the Tucker Act, 28 U.S.C. § 1491. The Supreme Court held, however, that the fashioning of judicial remedies for the A cases with nonjudicial review in the B cases, implies an intent that this is to be all. Such an implication is drawn from the bare text even before it is confirmed by the legislative history, showing the reason for the difference as stated above.

Thus there can be implied preclusions of judicial review where the finality of the administrative decision is made just as absolute as when the preclusion is express. The reversed decision below, *Erika, Inc. v. United States,* 634 F.2d 580, 587, 225 Ct.Cl. 252, 261 (Ct.Cl.1980), undertook to use the "Scroggins formula," urging in support of its position that the "formula" cases, several of which it cited, showed that even an express preclusion allowed its exceptions though unrecognized in the statute itself; still more then would this be true of a merely implied preclusion. In *Erika* the Supreme Court teaches that express and implied preclusions are equally effective.

Congress has stated the same view. 5 U.S.C. § 702, Pub.L. No. 94–574, Act of October 21, 1976, is a broad waiver of sovereign immunity and consent to be sued in the federal courts in cases "seeking relief other than money damages." It provides that it does not "affect other limitations on judicial review" or confer "authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief that is sought." The legislative history, H.Rep. No. 94–1656, 5 U.S. Code Cong. & Adm.News, 94th Cong.2d Sess. 1976, p. 6121, shows that Congress considers a statute impliedly precludes judicial review if it contains any "implied preclusions" and description of one method of review impliedly precludes other methods. By this reasoning, the provision in § 8347(d) for judicial review of involuntary disability retirements for mental condition would preclude judicial review of other disability retirement decisions even without the finality language in § 8347(c). Congress has put two locks on the door.

The circuit court decision adopting the "Scroggins formula" in their decisions, relied on by the dissent herewith, in my view reveal how ill considered they are by their failure to deal with *Erika.* The OPM rightly relies on *Erika* as the strongest kind of Supreme Court support for its motion, citing it five times in its initial brief. Yet our majority opinion ignores *Erika* for reasons unfathomable by me.

In *Erika* we have the same court that first employed the "Scroggins formula" to undercut statutory finality, or express preclusion of judicial review, then for the first time after many years, proposing to extend the formula to another statutory preclusion, this time an implied one. At least I suppose that was the intent, though this was not expressly stated. The Supreme Court shoots this aircraft down in flames. If the formula still stands in the area of disability retirement, it stands as an odd anomaly which may not be, and never has been, extended to parallel situations. The law normally dislikes oddities of that kind, but seeks to regularize and harmonize. One is reminded of the rule once enforced by Chief Justice Rugg upon the Massachusetts Supreme Judicial Court that it was never to overrule a decision of its own that on later reflection it perceived to be erroneous. It was only to restrict the disfavored precedent "to its own peculiar facts," a signal to the bar never to cite the case again.

The technique of applying a statutory preclusion of judicial review is not, however, the simple open-and-shut or black-and-white issue it is perceived to be in the able majority opinion. As stated by Justice Brandeis years ago, *Lynch v. United States,* 292 U.S. 571, 586, 54 S.Ct. 840, 846, 78 L.Ed. 1434 (1934), a statute denying a constitutional right will not be read as a preclusion to save its constitutionality, but will only be so read if the language of Congress is unequivocal and no other interpretation is possible. This will rarely occur. The apparently flat and sweeping preclusion of § 876 of the Uniform Code of Military Justice is read in *Schlesinger v. Councilman, supra,* as allowing all sorts of collateral attacks in civilian courts if an alleged constitutional violation is grave enough or if the court-martial decision is simply void. (As to what is or was a void court-martial *see* II *Court of Claims History* (1978) at 49.) This result is much aided by the legislative history showing that the language was never expected to be a barrier to habeas corpus in appropriate cases. In *Johnson v. Robinson, supra,* recourse is had to legislative history material to show that, despite sweeping language, preclusion of inquiry by a court as to the constitutionality of a statutory provision affecting veterans' rights was not intended.

*United States v. California Eastern Line, Inc., supra,* shows a technique of literal construction of a statutory preclusion to save judicial review. Thus a preclusion of review as to "amount" of excessive profits determined in renegotiation is held not to preclude review as to what contracts are renegotiable, though the answer will govern "amount." In *Polos v. United States,* 621 F.2d 385, 391–92, 223 Ct.Cl. 547, 559–60 (1980), the suggestion is made or implied that the decisions as to disability and dependency, given finality by § 8347(c), are decisions as to questions of fact, whereas the questions saved for judicial review by the "Scroggins formula" are questions of law. The idea is spelled out more expressly in *Lancellotti v. OPM,* 704 F.2d 91 (3d Cir. 1983). That case identifies a situation where "disability" *vel non* depends on the answer to a legal question: construction of a statutory provision for termination of status as a disability annuitant upon one's reaching a specified level of income from wages or self-employment.

This kind of reasoning certainly echoes that found in the Supreme Court precedents in their technique of construing statutory finality clauses. However, I do not think it is valid here because it deals with only one of what I have called double locks: the express preclusion but not the implied one. The interpretation of the decisions given finality in § 8347(c) as those establishing facts only is possible but not required by the language of § 8347(c) standing alone, and is contradicted by the implied preclusion in § 8347(d), with the cross-reference from (c) to (d) added in 1980.

Mr. Lindahl's principal complaint of the MSPB decision is that it misallocated the burden of proof which he says should have been placed on the OPM, not on him. He next says it was a violation of "due process" to discharge him while his application to the OPM for disability retirement was pending undecided. This appears to be actually a

complaint of failure to follow a governing regulation. Thirdly, he says the decision of the MSPB that he was not disabled is unsupported by substantial evidence. The first two issues would arguably be saved from dismissal by the "Scroggins formula" which he invokes, but not if it is repudiated as a rule of decision in this court, as I favor. The third issue is not possibly saved for him even by the "Scroggins formula" since that formula does not provide for substantial evidence review. The dissent therefore should concede dismissal of that issue, to be consistent with the formula.

In summary, my conclusion is that preclusion of judicial review is never absolute in life, but at the Supreme Court level review has never been practiced in defiance of preclusions as much as the "Scroggins formula" would require. The formula is at best a peculiar anomaly invoked in but one class of case. Virtually it is an invitation to counsel to litigate any issue of statutory construction or interpretation of a regulation. As the Chief Judge writes, it was born of a judicial reluctance to be wholly bound from review of involuntary disability retirement cases where a desk official was given unregulated and unrestricted power to brand a resisting civil servant as mentally disabled. This situation is fully taken care of in § 8347(d)(2) and all other disability retirement rulings under § 8347(c) are at any rate subject to independent due process review by a quasi-judicial body that seems as well suited to perform the task, as the Tax Court was for renegotiations. Now the "Scroggins formula" remains to clutter and confuse the law in cases for which it was not devised, one that invites litigation in an area where Congress wished it not to be. We should, however, be more careful than the majority is not to commit us by dictum to extend the preclusion to instances of unconstitutional and void determinations where Congress could not reasonably, in the light of history, have expected the preclusion to be effective.

I would grant the motion as to all issues briefed for review by Mr. Lindahl.

NIES, Circuit Judge, concurring.

I join in the opinion of the majority but I do so, in part, because of the issues raised by Lindahl's petition for review which are not discussed in the other opinions. Lindahl seeks judicial review essentially of two issues: (1) the fact of his disability and (2) the failure of the MSPB to impose the burden of proof on OPM as required by 5 U.S.C. § 7701(c). The "question of disability" is clearly precluded by 5 U.S.C. § 8347(c) from judicial review. I do not agree, if the majority so holds, that all aspects of a disability claim are precluded from judicial review, although the claimant would have to seek relief through a different forum since our appellate review is limited to involuntary mental disability cases.

The second argument merely illustrates the error of the MSPB in attempting to force all disability claims into § 7701. MSPB admittedly does not follow § 7701 in a case such as this one. However, a statutorily imposed burden of proof cannot be conveniently ignored.

Since the thrust of appellant's petition is to obtain judicial review of the fact of his disability, I would not transfer the case to the United States Claims Court, as appellant asks. Judicial review of that question is precluded.

DAVIS, Circuit Judge, with whom FRIEDMAN, KASHIWA and SMITH, Circuit Judges, join, dissenting.

In my view the 1980 amendment of 5 U.S.C. § 8347 did not lessen or abolish the very narrow judicial review that has been accorded to disability retirement matters at least since 1956.[1] The legislative objective,

---

1. See *Ellmore v. Bruckner,* 236 F.2d 734, 736–37 (D.C.Cir.), *cert. denied,* 352 U.S. 955, 77 S.Ct. 329, 1 L.Ed.2d 244 (1956); *Murphy v. Wilson,* 236 F.2d 737 (D.C.Cir.1956); *Smith v. Dulles,* 236 F.2d 739, 740, 742 (D.C.Cir.), *cert. denied,* 352 U.S. 955, 77 S.Ct. 329, 1 L.Ed.2d 244 (1956); *Gaines v. United States,* 158 Ct.Cl. 497, 502, *cert. denied,* 371 U.S. 936, 83 S.Ct. 309, 9 L.Ed.2d 271 (1962); *Scroggins v. United States,* 397 F.2d 295, 297, 184 Ct.Cl. 530, ——, *cert. denied,* 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968); *McGlasson v. United*

rather, was to *expand* judicial review in the special area of involuntary mental-disability-retirement. I join, therefore, with the several courts of appeals that have come to the same conclusion. *Parodi v. MSPB,* 690 F.2d 731 (9th Cir.1982); *McCard v. United States,* 702 F.2d 978 (11th Cir.1983); *Turner v. OPM,* 707 F.2d 1499 (D.C.Cir., 1983); *Pitzak v. Office of Personnel Management,* 710 F.2d 1476 (10th Cir.1983); *see also Lancellotti v. OPM,* 704 F.2d 91 (3rd Cir.1983).[2] Because of these recent opinions, which cover the ground, I shorten my statement.

The core of it is that (a) the standard of narrow judicial review had been utilized for many years when Congress considered the 1980 amendment;[3] (b) Congress was made quite aware of that standard during its consideration of the 1980 amendment; (c) the whole focus of that Congressional consideration was the *over-narrowness* of that standard for involuntary mental disability cases; (d) no one seems to have suggested that, for other types of disability cases, the existing standard should be lessened or all review abolished (indeed, the then Director of OPM expressly told Congress that the prior standard would continue for non-mental disability cases, *see Turner v. OPM, supra,* 707 F.2d at 1503–04); (e) there is nothing in the Committee reports or the floor discussion suggesting that the prior judicial standard was no longer to be followed in the non-mental area; and (f) no change was made in the wording of the "finality" clause (except for the special provision for mental disability and express authorization for review by the MSPB).

In the face of that history, it is hard for me to think that, in explicitly *expanding* review for mental cases, Congress silently withdrew for non-mental cases the limited judicial review that had long been allowed. To paraphrase what the Supreme Court said in *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 381–2, 102 S.Ct. 1825, 1841, 72 L.Ed.2d 182 (1982) (a recent Supreme Court decision holding that the reenactment and enlargement of another federal statute had incorporated a prior judicial gloss): "it is abundantly clear" that the *Scroggins* standard "was a part of the 'contemporary legal context' in which Congress legislated" in 1980. "In that context, the fact that a comprehensive reexamination and significant amendment" of the disability retirement legislation "left intact the statutory provisions under which the federal courts" had developed and used the *Scroggins* standard "is of itself evidence that Congress affirmatively intended to preserve that remedy." When the "finality" language was retained and embodied in the 1980 amendment, that language carried with it the existing judicial interpretation.

By the same token it is improper to decide now (as the majority intimates should be done) that the *Scroggins* reading was incorrect when first adopted in 1956 (and since followed) and should be jettisoned regardless of Congress' position in 1980. Because Congress "affirmatively intended [in 1980] to preserve" that standard we cannot and should not now rule to the contrary.

For these reasons,[4] the motion to dismiss should be denied and petitioner accorded

*States,* 397 F.2d 303, 307, 184 Ct.Cl. 542, —— (1968); *McFarland v. United States,* 517 F.2d 938, 942–3, 207 Ct.Cl. 38, 45–48 (1975), *cert. denied,* 423 U.S. 1049, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976); *Allen v. United States,* 571 F.2d 14, 215 Ct.Cl. 524 (1978); *Fancher v. United States,* 588 F.2d 803, 806, 218 Ct.Cl. 504, 509–10 (1978); *Polos v. United States,* 621 F.2d 385, 391–2, 223 Ct.Cl. 547, 559–60 (1980).

**2.** In *Campbell v. OPM,* 694 F.2d 302 (1983), the Third Circuit seemed to view the 1980 amendment as abolishing all judicial review in non-mental disability retirement cases, but the later ruling in *Lancellotti* appears to have qualified

*Campbell* by according judicial review to legal rulings bearing on disability retirement pay. 704 F.2d at 96–98.

**3.** This standard is often called "*Scroggins*-type" review but it actually goes back about a dozen years before *Scroggins* was decided. *See supra* note 1.

**4.** These reasons apply *a fortiori* to the amendment made by the Civil Service Reform Act of 1978, as to which there is not the slightest indication of any purpose to change the then-existing standard of review.

the right to have his claim tested under the so-called *Scroggins* standard.

EDWARD S. SMITH, Circuit Judge, with whom FRIEDMAN, DAVIS, and KASHIWA, Circuit Judges, join, dissenting.

I fully join Judge Davis' dissent, but I write separately because I believe it particularly important, at the threshold of this court's existence, to consider the overall statutory structure of the civil service provisions as they relate to this court's appellate jurisdiction. I am especially mindful that, under the Federal Courts Improvement Act of 1982, this court is now the *only* circuit-level forum for petitioners seeking judicial review of most agency actions under the civil service laws. With the majority's result, I fear, we have adopted an unnecessarily cautious and restrictive approach to our nation-wide jurisdiction in this area.

## I.

The comprehensive appellate framework established over the considerable period of time between enactment of the Civil Service Reform Act of 1978 and the Federal Courts Improvement Act of 1982—and constructed by more than one Congress—does not present a model of clarity or singularity

of purpose. Specifically, the statutory interrelationships are significantly preordained depending upon the section of the code through which one enters in search of the various paths of appeal through this maze. The majority has entered the maze through a portal which mandates a dead end; it errs by failing properly to consider and weigh the merits of the other paths.

## A.

Beginning at section 7703(a)(1),[1] which is the jurisdictional provision for the Federal Circuit in the Civil Service Reform Act, this court has exclusive jurisdiction (*see* 28 U.S.C. § 1295(a)(9)) over "a final order or decision of the Merit Systems Protection Board" (emphasis supplied). An express exception to this inclusive jurisdiction is for discrimination cases, in section 7703(b)(2). Possible or partial exceptions may also be found in the civil service provisions dealing with review of Special Counsel cases[2] and Senior Executive Service removals.[3] Furthermore, section 7703(d) provides that the director of the Office of Personnel Management (OPM) may petition for review of "*any* final order or decision of the Board" (emphasis supplied) and that the Federal Circuit may hear any such case.[4]

---

1. All section references are to title 5, U.S.C., except where otherwise indicated.

2. Sections 1206 and 1207 concern Special Counsel investigations or prohibited personnel practices and hearings and decisions thereon. Section 1206(c) gives the Special Counsel authority to request the MSPB to take action on a prohibited personnel action; § 1206(g) requires the Special Counsel, if it determines that disciplinary action should be taken against an employee, to proceed according to § 1207; § 1206(h) authorizes the Special Counsel to seek corrective action before the MSPB for a pattern of prohibited personnel practices not otherwise appealable to the MSPB under § 7701; and § 1207(c) provides an employee subject to disciplinary action under § 1206(g) with the right to obtain judicial review of a final order of the MSPB in the appropriate regional circuit. I do not attempt to sort out here to which circuit court (this court or regional circuits) appeals for various types of Special Counsel cases go. Suffice it to say, however, that the matter is more complex than the majority, citing § 1207 only, has suggested.

3. Section 3592, concerning removal from the Senior Executive Service, allows a career appointee to request, in certain circumstances, an informal hearing before an official appointed by the MSPB, but denies that appointee the right to initiate an action with the MSPB under § 7701. The majority summarily concludes from this provision that the career appointee has neither MSPB nor court appeal rights in these circumstances. While this may be correct (*i.e.*, there may not be "a final order" of the MSPB), I am not prepared to so quickly hold without proper examination of congressional intent and the structure of this provision. (For example, §§ 3593 and 3595 authorize career appointees to appeal certain Senior Executive Service reinstatement or reduction-in-force actions under § 7701 to the MSPB.)

4. It seems clear that "a" in § 7703(a)(1) means "any," and so would achieve parallelism with subsection (d)(1). Such interpretation, however, is not necessary to my views.

Section 7703(a)(2) also has implications for the jurisdiction of the MSPB and this court. It differentiates between the procedures to be followed in review of final orders or decisions "issued by the Board under section 7701" and those to be followed in review of other MSPB decisions. *See Phillips v. USPS,* 695 F.2d 1389, 1390 n. 2 (Fed.Cir.1982). Thus the MSPB has not one but a plurality of jurisdictional bases for its actions, and it is important to see what each is.

Section 7701(a) is clearly the main basis— it covers in essence all appealable agency adverse actions—and we have held that our jurisdiction of section 7701(a) actions is "plenary." *Rosano v. Department of the Navy,* 699 F.2d 1315, 1317 (Fed.Cir.1983). Section 7701(a) is expressly made the jurisdictional basis for actions under sections 4303(e) (actions based on unacceptable performance), 7513(d) (adverse actions taken to promote the efficiency of the service), 7121(e) (grievance procedures), 7543(d) (actions against senior executives), and 3593 and 3595 (reinstatement or reduction in force in the Senior Executive Service). Section 5335(c) (withholding of periodic step increase), though it mentions no jurisdictional basis, has been held to be appealable under section 7701. *Meyer v. Department of Health & Human Services,* 666 F.2d 540, 544–45 (Ct.Cl.1981). Likewise, many actions made appealable to the MSPB by OPM regulation (see section 7701(a), 5 C.F.R. § 1201.3(a)(8)) would be appealed under section 7701, though the regulations do not specifically mention it. *See, e.g.,* 5 C.F.R. § 351.901 (reduction in force); 5 C.F.R. § 300.104(a) (employment practices). Finally, section 8347(d)(2) (OPM mental disability) determinations are expressly reviewed under section 7701(a).

Non-7701(a) cases would include, first, section 7702 (discrimination) cases which do not come to the Federal Circuit at all. Secondly, section 8347(d)(1) (OPM physical disability) determinations are also heard by the MSPB, but are either reviewed, as I see it, under *Scroggins* standards, *i.e.,* a lower

standard than for section 7701, or, as the majority sees it, not at all, *i.e.,* a *much* lower standard than 7701. Thirdly, those non-7701(a) cases referred to in section 7703(a)(2), then, must include actions pursuant to sections 1206(c) and (h) (special counsel actions) and possibly 3592 (removal from the Senior Executive Service).[5] Finally, MSPB decisions regarding award of attorney's fees under section 7701(g)(1) do not originate in an agency but are nevertheless reviewable by this court. *See, e.g., Sterner v. Department of the Army,* 711 F.2d 1563 (Fed.Cir.1983).

To sum up, if one starts with section 7703(a)(1), one finds that this court has jurisdiction of all MSPB decisions except discrimination cases and possibly certain Special Counsel and Senior Executive Service cases. MSPB decisions fall into five categories—section 7701(a), non-7701(a) (*i.e.,* those indicated by section 7703(a)(2)), physical disability determinations, attorney's fees awards, and discrimination—each of which categories has a different (or no) standard of review in this court.

**B.**

Starting instead at section 7701(a), the provision for MSPB jurisdiction, one immediately notes that its language is as broad as (or broader than) the provision for Federal Circuit jurisdiction in section 7703(a)(1). The MSPB has jurisdiction of "*any* action which is appealable to the Board under *any* law, rule, or regulation" (emphasis supplied). Based on this plain language, the MSPB has taken the position that 7701 is an umbrella provision, encompassing *all* substantive rights to appeal. In other words, all non-discrimination claims are funneled through section 7701 review by the board and thence to the Federal Circuit.

It is tempting to accept this view, for, since we have held that our section 7701(a) review authority is "plenary" (*Rosano*), this view would obviate the need for these many pages attempting to unravel the jurisdic-

---

**5.** *See* notes 2 and 3, *supra.*

tional knot before us. I agree with the majority, however, that careful statutory construction cannot bring us to such an elegant conclusion. For example, if all review were either under section 7701 or 7702, then section 7703(a)(2) would be meaningless in suggesting non-7701 appeals to the Federal Circuit. Sections 1206, 1207, 3592, and 8347(d)(1), which expressly or apparently provide independent appeal routes to the MSPB, would be overridden.

### C.

As to another alternate route, if one begins at section 8347, as the majority does, it seems immediately apparent that section 7701 does not apply to section 8347(d)(1) (physical disability) actions. Legislative history aside, the structure of subsections (c) and (d) makes it plain that a difference in treatment is intended between paragraphs (1) and (2): that MSPB reviews mental disability ((d)(2)) under 7701, while it reviews physical disability ((d)(1)) under (d)(1) itself, with procedures prescribed by the MSPB. There is therefore a conflict here with the plain language of section 7701(a), which covers "*any* action * * * appealable to the Board under *any* law." (Emphasis added.)

Moreover, as the majority discusses, the statute provides that mental disability ((d)(2)) cases are not only to be reviewed by the MSPB under section 7701 but also "shall be subject to judicial review under section 7703." Since this language is absent from the physical disability (d)(1) provision, the majority not unreasonably concludes that Congress meant to deny section 7703 judicial review to (d)(1) physical disability cases. The majority finds conclusive statutory support for this view in the section 8347(c) "finality clause."[6]

Viewed in isolation, then, section 8347 would suggest an appellate structure different from that suggested either by the MSPB or Federal Circuit provisions. Yet, even if one did not question the wisdom of

determining overall appellate structure from a small part of the whole rather than from one of the broader appellate provisions, the conflict remains.

### II.

As the foregoing demonstrates, under the civil service laws the appellate structure can be a relative thing. By concentrating on section 8347, the majority has not eliminated or avoided anomaly but has fallen victim to this relativism and implicitly created an anomalous system which, even if it is the best one (which I do not believe), fails to account for the difficulties it engenders.

The most significant anomaly, to my mind, is the conflict between the majority's holding of no review and the plenary authority of the Federal Circuit to review as set out in section 7703(a)(1). Section 7703 contains broad and inclusive language. The Senate Report on the Civil Service Reform Act states that this section "applies to judicial review of *all* final orders or decisions of the Board * * *." S.Rep. No. 969, 95th Cong., 2d Sess. 62, *reprinted in* 1978 U.S. Code Cong. & Ad.News 2723, 2784 (emphasis supplied). Under the Federal Courts Improvement Act, the *entire* jurisdiction created by section 7703 devolved upon this court. H.R.Rep. No. 312 at 18 ("jurisdiction * * * over *all* appeals from the Merit Systems Protection Board" (emphasis supplied)); S.Rep. No. 275, 97th Cong., 2d Sess. 21, *reprinted in* 1982 U.S.Code Cong. & Ad. News 11, 31 ("jurisdiction of *any* appeal from a final order or final decision of the Merit Systems Protection Board" (emphasis supplied)). There is absolutely no reason to believe—and numerous reasons to doubt—that Congress intended this court to approach its MSPB jurisdiction with the extreme caution practiced by the majority.

A more particular anomaly is created by the majority with respect to section 7703(d)—OPM petition for review of *any* MSPB decision. I have already noted that the majority too easily implies a total lack of

---

**6.** So persuasive is the so-called "finality clause" in the majority's view, however, that it proceeds to the next and, to my mind, wholly

unnecessary step of abolishing even the long-standing *Scroggins* review. I respectfully part company with the majority at this point.

judicial review for voluntary retirees in physical disability cases, notwithstanding the fact that in almost a quarter century of experience under the *Scroggins* formula there has been no jamming of the courthouse door by the few fingers that have grasped it. Amazingly enough, the majority also chooses this opportunity to preclude judicial review in these cases for *OPM* as well. This despite the express language of section 7703(d)—"*any* final order or decision"—and the absence in the briefs and arguments of any in-depth discussion of section 7703(d) and its purpose. In order to vest its decision with an aura of consistency the majority not only closes the courthouse door on the fingers of individuals but slams it shut on OPM in 8347(d)(1) cases. Had it not, a reasonable reader of section 7703(d) would be astonished to find that discretionary review of these cases in this court is available to OPM, whereas an individual has *no* review.

While I readily admit that anomalies in this complex area abound, in my view the better approach is, as I explain below, to let stand the limited *Scroggins*-level review for individuals as well as the plain language of section 7703(d) pertaining to OPM review. This approach results in equal if not greater consistency than the majority's all-or-nothing stand, since the level of review OPM may receive in this court parallels that of the individual under *Scroggins:* both aim to catch the worst abuses of the administering agency. *See* S.Rep. No. 969 at 64, 1978 U.S.Code Cong. & Ad.News at 2786.

Another anomaly resulting from the majority's position is that it results in denial of review to a class of persons—"individual[s]" under section 8347(d)(1)—broader than that granted under sections 7703 and 7701—"employee[s] or applicant[s] for employment." At least with the *Scroggins* approach, these "individual[s]" (presumably including at least beneficiaries of employees) receive some type of review, although less than the full 7703 review for "employee[s] or applicant[s] for employment."

Anomalies exist either way, but I believe my approach results in less injustice.

Finally, the majority's result is at odds with the broad language of section 7701. Section 7701 covers "any action which is appealable to the Board under any law"; section 8347 fits within "any law." Since all section 7701 actions are reviewable by this court, a conflict arises, for which, unfortunately, the majority offers unsatisfactory explanation.

### III.

Given the opposing yet, when viewed in isolation, reasonable results which obtain when one tackles this statutory construction problem beginning at each of the above three starting points, a thoughtful person might conclude that either result (jurisdiction or no jurisdiction) is proper. However, tipping the scales in favor of at least some sort of review is, in my opinion, the law of the land that, absent clear and convincing evidence of congressional intent to preclude the important right to judicial review, review must be granted. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140–41, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967); *Dunlop v. Bachowski,* 421 U.S. 560, 567, 95 S.Ct. 1851, 1857, 44 L.Ed.2d 377 (1975). When the *Abbott Laboratories* presumption of review is combined with the 1980 activities of Congress in amending section 8347(d), which Judge Davis has succinctly described in his dissent, and the overall appellate framework I have attempted to describe here, I am firmly persuaded that at a minimum Congress intended the *Scroggins*-level of review to apply to physical disability cases. For this court not only to hold, as the majority does, that section 7703 review does not apply here, but to backtrack and eliminate even the barest of *Scroggins*-type review, is an unnecessary abdication of our jurisdictional and statutory responsibilities. The majority's holding, totally barring review in these cases, will apply to all petitioners who would seek circuit court review for, under the Federal

Courts Improvement Act, it is only this court to which they may now turn.[7]

### IV.

I respectfully dissent, and presume to submit the following diagram of the appellate structure created by the Civil Service Reform Act and the Federal Courts Improvement Act, which harmonizes as much as possible all of the provisions of the acts. (To accommodate the majority's position one need only make the dashed lines solid and remove the *Scroggins* and OPM references.) This diagram is, of course, not the definitive word of this court in this complex area, but I hope that it may serve as a useful analytical tool for those entering this maze of appellate jurisdiction.

---

**7.** Certainly courts should not strain for jurisdiction where it plainly does not exist, but that "canon" loses some strength where there is a long history of *some* jurisdiction. Furthermore, it should not be forgotten that, although the Federal Circuit is not "The Civil Service Court" any more than it is "The Public Contracts Court," or even "The Patent Court," Congress has assembled this bench of judges with broad and diverse backgrounds for the purpose, among others, of establishing as much uniformity as practicable in the civil service area. That legislative policy would be defeated if we choose the path of least jurisdiction when there is no clear mandate to do so. Indeed, there is strong evidence in the legislative history of the Federal Courts Improvement Act that the presumption should be in favor of jurisdiction in those areas where Congress has expressly spoken for and created a court for the purpose of advancing uniformity.